# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 1999 Session

## JAMES CARROLL, ET AL. v. CAROLYN WHITNEY, M.D., ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. 68714      Hon. Janice M. Holder, Judge**

---

**No. W1997-00246-SC-R11-CV - Filed October 4, 2000**

---

This is an appeal from the Circuit Court for Shelby County which allowed a jury, in an action alleging malpractice, to allocate fault to resident physicians who were immune from suit. The Court of Appeals reversed the judgment of the trial court and concluded that the trial court should not have permitted the jury to apportion fault to the residents because they were immune. We then granted this appeal to decide whether the trial court erred in allowing nonparties who were immune from suit to appear on a jury verdict form. After examining the record, considering the arguments of the parties and amicus curiae, and analyzing the applicable law, we conclude that the trial court did not err in allowing the immune nonparties to appear on the jury verdict form. Accordingly, for the reasons herein, we reverse the Court of Appeals and reinstate the judgment of the trial court.

### Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Appeals Reversed

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, and ADOLPHO A. BIRCH, JR., JJ., joined. E. RILEY ANDERSON, C.J., filed a dissenting opinion. JANICE M. HOLDER, J., not participating.

Robert L.J. Spence, Jr. and Chapman Sellers Morrow, Memphis, Tennessee, for the appellants, Carolyn Whitney, M.D., and Grover W. Barnes, M.D., P.C.; Thomas R. Prewitt, Robertson M. Leatherman, and Parke S. Morris, Memphis, Tennessee, for the appellant, LeBonheur Children's Medical Center, Inc.

Carl I. Jacobson and Ross Higman, Memphis Tennessee, for the appellees, James Carroll, Forestine Carroll, and James Carroll and Forestine Carroll for the use and benefit of the estate of Jessica Renee Carroll, a minor, deceased.

Jerry E. Mitchell and John H. Dotson, Memphis, Tennessee, for the Amicus Curiae, UT Medical Group, Inc.

# OPINION

Jessica Renee Carroll, a fourteen-month-old child, died of sepsis[1] and pneumonia on March 23, 1992, while she was a patient at LeBonheur Children's Medical Center (LeBonheur). The previous day, because Jessica was vomiting and running a fever between 100 and 105 degrees, her mother, Forestine Carroll, contacted Dr. Carolyn Whitney, Jessica's pediatrician. Later that day, Jessica's temperature began to fall and her vomiting ceased. Although Dr. Whitney agreed to see Jessica in her office the next day, she advised Mrs. Carroll to take Jessica to the emergency room if Jessica began having more problems with her temperature or vomiting.

When Dr. Whitney examined Jessica the next day, March 23, 1992, she found her to be nonresponsive with a low white blood cell count although she had only a slight fever. In addition, Dr. Whitney diagnosed Jessica as suffering from tonsillitis, a heart murmur, and dehydration. Jessica was admitted to LeBonheur, and Dr. Whitney ordered that she be administered antibiotics and intravenous fluids. Although Dr. Whitney did not include information concerning Jessica's low white blood cell count in her admission orders, she did direct that a complete blood count be performed.

At LeBonheur, Jessica was examined at approximately 1:00 p.m. by Dr. Reggie Lyell and Dr. Azra Sehic, University of Tennessee resident physicians. Dr. Lyell was a first-year resident physician, and Dr. Sehic was the supervising resident. Dr. Sehic was concerned that Jessica might be suffering from pneumonia with possible sepsis, and she ordered blood tests to be conducted. Dr. Lyell called and notified Dr. Whitney that Jessica's condition was stable. Both Dr. Lyell and Dr. Sehic were aware of the treatment ordered by Dr. Whitney, and Dr. Sehic later conceded that antibiotics, once recommended, should be administered within thirty minutes.

Around 3:30 p.m., Dr. Lyell was notified that the tests performed on Jessica's blood revealed the presence of bacteria in her blood. Dr. Lyell then contacted Dr. Sehic to inform her of the results. Although more than two and one-half hours had passed since the initial examination of Jessica at LeBonheur, Jessica still had not received the antibiotics and intravenous fluids ordered by Dr. Whitney. Dr. Sehic again examined Jessica and concluded that she needed to receive intravenous fluids and should be transferred to the intensive care unit. Shortly thereafter, Jessica suffered a seizure and lapsed into unconsciousness that lasted until her death around 6:30 p.m. The cause of Jessica's death was ultimately determined to be pneumonia and sepsis.

---

[1] The evidence in this case indicates that sepsis is a bacterial infection. External symptoms of sepsis include fever, hyperventilation, skin rash, and decreased urine output. Blood cultures of individuals infected with sepsis may reveal the presence of bacteria or a low white blood cell count. Once a diagnosis of sepsis is suspected, it is generally recommended that intravenous antibiotic therapy be initiated as quickly as possible. In addition, administration of intravenous fluids is used to complement the antibiotic treatment.

After Jessica's death, James and Forestine Carroll (the plaintiffs), brought a medical malpractice action against the following parties: LeBonheur, Dr. Whitney, Dr. Grover W. Barnes, Dr. Whitney's employer,[2] and Dr. Sehic and Dr. Lyell (the residents). The residents filed a motion to dismiss arguing that, as state employees, they were immune from suit pursuant to Tennessee Code Annotated section 9-8-307. The trial court granted the motion, and the plaintiffs voluntarily dismissed the action against the remaining defendants.

The plaintiffs then re-filed this action against the non-immune defendants. In addition, the plaintiffs filed a claim against the State of Tennessee in the Claims Commission for the actions of the residents. During the trial in the Shelby County Circuit Court, the defendants referred to the claim against the State, and they argued that the residents' negligence, rather than their own conduct, was the cause of Jessica's death. At the conclusion of the trial, the judge instructed the jury to apportion fault among the defendants, the residents, and Forestine Carroll. The jury apportioned 70% fault to Dr. Lyell, 30% fault to Dr. Sehic, and 0% fault to the defendants and Forestine Carroll, and the trial court entered judgment consistent with the jury verdict.

The Court of Appeals reversed the judgment of the trial court and concluded that the jury should not have been permitted to apportion fault to the residents because they were immune from suit. The Court of Appeals also held that permitting the jury to apportion fault to the residents was not harmless error, because it was unclear whether the jury would have assigned 0% fault to the defendants had it not been instructed that it could also allocate fault to the residents. The defendants then filed an application for permission to appeal, which we granted.

## DISCUSSION

In negligence actions prior to 1992, Tennessee courts applied the common law doctrine of contributory negligence. Under this doctrine, a plaintiff whose own negligence in any way contributed to the injury was barred from recovery. See Bejach v. Colby, 214 S.W.2d 869, 870 (Tenn. 1919); Kelley v. Johnson, 796 S.W.2d 155, 158-59 (Tenn. Ct. App. 1990).[3] In McIntyre v. Balentine, 833 S.W.2d 52, 56 (Tenn. 1992), this Court adopted a modified system of comparative fault by which a plaintiff could recover damages if the plaintiff's negligence was less than that of the defendant. See id. at 56-57.[4] According to the Court, fairness to plaintiffs justified the rejection of contributory negligence. "Justice simply will not permit . . . continued adherence to a rule that, in

---

[2] The term "defendants" refers collectively to Dr. Whitney, Dr. Barnes, and LeBonheur.

[3] Although generally used to prevent negligent plaintiffs from recovery, contributory negligence was subject to a number of exceptions that mitigated the harshness of the "all or nothing" rule. See McIntyre v. Balentine, 833 S.W.2d 52, 55 (Tenn. 1992).

[4] While virtually all jurisdictions have adopted some form of comparative fault, five jurisdictions retain the traditional system of contributory negligence. See Williams v. Delta Int'l Mach. Corp., 619 So. 2d 1330 (Ala. 1993); Holmes v. Amerex Rent-A-Car, 710 A.2d 846 (D.C. 1998); Harrison v. Montgomery County Bd. of Educ., 456 A.2d 894 (Md. 1983); Jones v. Rochelle, 479 S.E.2d 231 (N.C. Ct. App. 1997); Gravitt v. Ward, 518 S.E.2d 631 (Va. 1999).

the face of a judicial determination that others bear primary responsibility, nevertheless completely denies injured litigants recompense for their damages." Id. at 56.

Also, fairness to defendants led the Court to conclude that the adoption of comparative fault rendered obsolete the doctrine of joint and several liability. See id. at 58. By rejecting contributory negligence, the Court sought a tighter fit between liability and fault. According to the Court, "it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault." Id. at 58. We surmised that under the new system, a defendant would only be liable for the percentage of damages caused by that defendant's negligence. See id. To permit the defendant to take advantage of this new system linking more closely liability to fault, the Court adopted a nonparty defense.[5] As this Court explained:

> [F]airness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign this nonparty the percentage of the total negligence for which he is responsible.

Id.

Significantly, the Court did not require that a cause of action be available before a jury could apportion fault to nonparties. The Court stated in McIntyre that

> in order for a plaintiff to recover a judgment against such additional person, the plaintiff must have made a timely amendment to his complaint and caused process to be served on such additional person. Thereafter, the additional party will be required to answer the amended complaint.

Id. A plaintiff's ability to bring a cause of action was only important—to the extent that it mattered at all in the Court's analysis—in determining whether the plaintiff could recover damages, not whether a jury could apportion fault to a nonparty.

While we attempted to provide guidance on how to implement comparative fault, we explicitly left the treatment of nonparty tortfeasors to another day and an "appropriate controversy." See id. at 60. It was not until Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996), that the Court addressed this issue. In Ridings, the plaintiff brought a negligence action after he fell from a ladder during the course and scope of his employment. Relying upon McIntyre, the

---

[5] By adopting the nonparty defense, we implicitly rejected the minority position permitting allocation of fault only to parties before the court. See, e.g., Alaska Stat. § 09.17.080 (Michie 1999); Bradford v. Herzig, 638 A.2d 608, 612 (Conn. App. Ct. 1994); Schwennen v. Abell, 430 N.W.2d 98, 102 (Iowa 1988); Bencivenga v. J.J.A.M.M., Inc., 609 A.2d 1299, 1303 (N.J. Super. Ct. App. Div. 1992); Eberly v. A-P Controls, Inc., 572 N.E.2d 633, 638 n.5 (Ohio 1991); Brown v. Washington County, 987 P.2d 1254, 1262 (Or. Ct. App. 1999); Kelly v. Carborundum Co., 453 A.2d 624, 627 (Pa. Super. Ct. 1982); Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (West 1997).

defendants attempted to assert as an affirmative defense that a nonparty, the plaintiff's employer, caused or contributed to the plaintiff's injuries. The plaintiff, however, could not maintain a cause of action for damages against his employer because of the exclusive remedy provisions of the Workers' Compensation Law.

In examining whether a defendant in a negligence action could assert that an immune nonparty caused or contributed to the plaintiff's injuries, this Court purported to rely on the policy considerations and rationale of McIntyre. The Court explained:

> The designation "nonparty," used in McIntyre, is not a term of art; it means "not a party." However, it is given a particular meaning by the decision in McIntyre, wherein the Court found that, upon a defendant's allegation that a person not a party to the suit, a "nonparty," caused or contributed to the plaintiff's injuries, the plaintiff, by amendment to the complaint and service of process, may make the "nonparty" a "party" that is answerable to the plaintiff in actions for damages according to the Rules of Civil Procedure. Consequently, only a nonparty against whom the plaintiff has a cause of action can be made a party. Since the plaintiff's employer cannot be made a party to the plaintiff's for personal injuries sustained in the course and scope of his employment, the rationale of McIntyre, both as to principle and procedure will not permit fault to be attributed to the plaintiff's employer.

Id. at 81-82. Our conclusion was supported by "[t]he rationale of McIntyre [which] postulates that fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort." See id. at 81.

A careful reading of McIntyre, however, suggests that neither the holding of the case nor its underlying rationale limits the attribution of fault only to persons against whom the plaintiff has a cause of action in tort. Our treatment of nonparties in McIntyre simply examined a plaintiff's ability to recover damages from a nonparty, and our holding was limited accordingly. See McIntyre, 833 S.W.2d at 60 (denying plaintiff's petition requesting argument on the treatment of nonparty tortfeasors). In addition, defendants also benefitted from this fairer system of fault allocation through the abolition of joint and several liability and the adoption of the nonparty defense. See id. at 58.

The Court's decision in Ridings was challenged in Snyder v. LTG Lufttechnische GmbH, 955 S.W.2d 252 (Tenn. 1997). In response to the defendants' argument that Ridings was inconsistent with McIntyre's objective of fairness, we examined whether a defendant in a negligence action could introduce evidence that the conduct of the plaintiff's employer proximately caused or contributed to a plaintiff's injury. See id. at 252. We concluded that a defendant could not introduce such evidence based upon our statement in Ridings that "a plaintiff's right to recover on allegations of negligence . . . is determined *without reference* to the [immune nonparty's] conduct." Ridings, 914 S.W.2d at 84 (emphasis added). Indeed, we reaffirmed our decision in Ridings:

There is no question that the Court in <u>Ridings</u> considered the "fairness" arguments advanced here by the defendants and made a policy decision to leave immune [nonparties] out of the assessment of fault. We thus decline the defendants' invitation to reverse <u>Ridings</u> or otherwise depart from the rule adopted in that decision.

<u>Snyder</u>, 955 S.W.2d at 256. Our holding affirmed that <u>Ridings</u> was good law and that it stood for the proposition that a defendant could not introduce evidence that the plaintiff's employer proximately caused or contributed to a plaintiff's injury.

Nevertheless, we decided to examine whether a defendant could introduce evidence that the immune employer was the cause in fact of a plaintiff's injury. We expressed concern that not allowing such evidence would make discussion of the case nearly impossible, with the result that "the jury would not hear evidence of the true facts . . . but, [would] be asked to determine fault and hence liability for damages." <u>Id.</u> Therefore, in determining whether a plaintiff met the burden of establishing "but for" causation, we concluded that a jury could consider any evidence relevant to the incident giving rise to the plaintiff's injury. <u>See id.</u> at 257.

Although we cautioned that the trial court was to instruct the jury that it could not consider the evidence for purposes of determining proximate causation, <u>see id.</u>, the practical effect of <u>Snyder</u> was to invite trial courts to depart from the rule in <u>Ridings</u>. Even assuming that the trial court in this case erred in permitting the jury to apportion fault, any error would have to be harmless. <u>See</u> Tenn. R. App. P. 36(b). The jury was presented with a full picture of the events leading to Jessica Carroll's death, and, given this opportunity, the jury found that the defendants were in no way responsible for Jessica's death. It strains credibility to suggest that a verdict by a fully-informed jury somehow constitutes harmful error. Yet, if we retain our current system of fault allocation, appellate review will be purely academic because virtually every such error will be harmless.

On the other hand, to conclude that the trial court's conduct constitutes harmful error, we would either have to exclude evidence of an immune nonparty's conduct and thereby blindfold the jury to relevant evidence or we would have to force a jury to allocate fault between parties who were not wholly responsible. This is a choice that we decline to make. Instead, we hold that when a defendant raises the nonparty defense in a negligence action, a jury may generally apportion fault to immune nonparties.

Although our decision today achieves a result different from <u>Ridings</u> and <u>Snyder</u>, those cases are not overruled. Rather, they remain uniquely applicable with regard to the allocation of fault to employers in workers' compensation cases. In such cases, an employer's liability is governed exclusively by the Workers' Compensation Law. <u>See</u> Tenn. Code Ann. § 50-6-108(a) (1999). While an employee cannot proceed with a tort action against the employer, the employee may seek damages from some person other than the employer. <u>See</u> § 50-6-112(a). If the employee succeeds in an action against a third party, the employer that has fully or partially paid its maximum liability for

workers' compensation is entitled to a subrogation lien against the employee's recovery. See § 50-6-112(a).

Our reason for retaining Ridings and Snyder in these cases is simple and consistent with the standard otherwise applicable: fairness. An example illustrates the basic unfairness that would result from application of the standard we adopt today to cases brought against third parties by employees injured on the job. An employee who is injured by a piece of equipment may have a cause of action for products liability against the machine's manufacturer. However, the manufacturer could assert at trial that the employer altered the machine, and that this alteration caused the employee's injury. A jury, acting on this use of the nonparty defense, could then allocate fault between the manufacturer and the immune employer, thereby reducing the employee's recovery. Subsequently, the employer could exercise its right of subrogation with regard to the damages assessed against the manufacturer and recovered by the employee. Essentially then, the employer's right of subrogation would defeat the employee's statutory right to seek damages from other tortfeasors. We are unwilling to extend our holding this far. Outside of this limited use, however, the standard we announce today is generally applicable in comparative fault cases. Morever, we note that even in cases brought by employees against third parties, a jury may still allocate fault to other tortfeasors against whom a plaintiff, for any reason, could not recover.[6]

The dissenting opinion argues that the trier of fact should not be permitted to allocate fault to immune nonparties, and its position is premised upon two primary considerations: (1) that the Ridings Court was faithful to the principles and goals of McIntyre; and (2) that the rule adopted by the Court today effectively overrules Ridings and Synder, contrary to the dictates of *stare decisis.* We disagree with the dissent for two reasons.

First, although Ridings purported to apply the "rationale of McIntyre" in holding that "fault may be attributed only to those persons against whom the plaintiff has a cause of action," we repeat that nothing in the rationale of McIntyre compelled such a result. Indeed, given McIntyre's concerns of fairness to defendants, along with its abolition of joint-and-several liability, application of the Ridings holding outside of Workers' Compensation is at odds with the rationale of McIntyre.

Moreover, although the dissent correctly acknowledges that the Snyder Court affirmed the Ridings rule, it did so only as far as the Ridings rule applies in Workers' Compensation cases. Application of any similar limitation outside of Workers' Compensation was rejected by the Snyder Court, which recognized that juries should be allowed to consider any evidence relevant to assessing the actual cause of the plaintiff's injury. By way of contrast, the approach advocated by the dissent would do significant harm to McIntyre, as the dissent's approach would no longer link fault with liability and would thereby render defendants liable for more than their own proportionate share of fault.

---

[6] Again, an example illustrates this proposition. An employee may bring a cause of action against two tortfeasors, one of whom successfully raises as a defense, the running of the statute of limitations. While the employee cannot recover damages from this tortfeasor, the jury is still free to allocate fault to this nonparty.

Second, our decision today does not ignore the command of *stare decisis* as the dissent vigorously argues. Both Ridings and Snyder were Workers' Compensation cases, and each was properly decided in that context given the unique concerns of the exclusive remedy provision and the employer's right of subrogation. The dissent argues that by not expanding the Ridings-Snyder rule to other types of cases, we somehow overrule both of those cases. To the contrary, however, we have acknowledged that the Ridings-Snyder rule is still the appropriate rule for Workers' Compensation cases. Because ordinary tort law does not share the exclusive remedy and employer subrogation aspects of workers' compensation law, though, retention of the Ridings-Snyder rule in other aspects of tort law would do significant harm to the rationale of McIntyre.

While our decision to depart from Ridings and Snyder is prompted primarily by the effect harmless error analysis has on our system of fault allocation, our decision is also grounded in the rationale that led to the adoption of comparative fault in the first place: fairness to the parties by linking fault with liability. In McIntyre, we rejected contributory negligence and joint and several liability in favor of comparative negligence to achieve a fairer and tighter fit between fault and liability. This "fair and tight fit" is lost, however, when some participants to an act of negligence are excluded from the apportionment of fault.

Pursuant to Snyder, under the present system of fault allocation, a jury is permitted to hear all evidence relevant to the injury-causing event. Yet the jury is not permitted to allocate fault to some of the participants, even though those participants may have contributed to the injury. Given these circumstances, the likelihood is great that the jury will allocate to a defendant fault that properly lies elsewhere. See Kirby Bldg. Sys. v. Mineral Exploration Co., 704 P.2d 1266, 1272-73 (Wyo. 1985) ("Logic dictates that, if the negligence of an actor who is not a party is not included in the comparative-negligence calculation, the percentage of negligence of defendants who are parties may be inflated . . . ."). This result would hardly promote the policy of fairness that prompted this Court to adopt comparative fault. Compare Estate of Hunter v. General Motors Corp., 729 So. 2d 1264, 1273 (Miss. 1999) ("It would be patently unfair in many cases to require a defendant to be 'dragged into court' for the malfeasance of another and to thereupon forbid the defendant from establishing that fault should properly lie elsewhere.").

Moreover, the exclusion of some tortfeasors from the universe of persons and entities to whom fault can be allocated has the effect of reviving joint and several liability. Through our rejection of joint and several liability in McIntyre, we shifted to plaintiffs the risk that no recovery could be obtained due to the presence of judgment-proof tortfeasors. While not an explicit revival of joint and several liability, a decision that the trial court in this case acted in error certainly breathes life into the doctrine that was already discarded by this Court. In addressing this issue, the Utah Supreme Court concluded that a jury, unable to allocate fault to immune nonparties, would hold the defendants liable "not only for their own proportionate share of fault, but also for the proportionate share of fault attributable to the [immune nonparties]. Thus, one of the major evils of joint and several liability would result . . . ." Sullivan v. Scoular Grain Co., 853 P.2d 877, 880 (Utah 1993).

In fact, following our decision in McIntyre, we declined the opportunity to protect plaintiffs

-8-

from the risk that they could not recover damages from insolvent defendants through our rejection of principles embodied in the Uniform Comparative Fault Act. When a tortfeasor is insolvent, either a plaintiff will receive less than full compensation, or a solvent defendant will be liable for an amount greater than his proportional fault. See John Scott Hickman, Note, Efficiency, Fairness, and Common Sense: The Case for One Cause of Action as to Percentage of Fault in Comparative Negligence Jurisdictions That Have Abolished or Modified Joint and Several Liability, 48 Vand. L. Rev. 739, 745 (1995). In a jurisdiction that has abolished joint and several liability, this burden would typically fall on the plaintiff, see id.; however, a provision of the Uniform Comparative Fault Act permits the reallocation of the insolvent tortfeasor's fault among the remaining parties. See Unif. Comparative Fault Act § 2(d), 12 U.L.A. 43 (Supp. 1995).

In Volz v. Ledes, 895 S.W.2d 677, 680 (Tenn. 1995), this Court declined to adopt such a provision and concluded that "the goal of linking liability with fault is [not] furthered by a rule that allows a defendant's liability to be determined by the happenstance of the financial wherewithal of other defendants." The Court emphasized: "We again confirm that the doctrine of joint and several liability was rendered obsolete by our decision in McIntyre v. Balentine." Id. at 680. Thus, out of fairness to defendants, we allowed the burden of a judgment-proof insolvent tortfeasor to fall on the plaintiff. We refused to permit an implicit revival of joint and several liability then, and we do so again today.

The plaintiffs argue, however, that if a jury is permitted to allocate fault to an immune nonparty, then defendants will shift the burden for the injury to those immune persons or entities. We find this argument unconvincing, though, because defendants are not permitted to shrug off blame with a casual "I didn't do it; she did." Rather, because the nonparty defense is an affirmative defense, a jury can apportion fault to a nonparty only after it is convinced that the defendant's burden of establishing that a nonparty caused or contributed to the plaintiff's injury has been met. Thus, defendants are not permitted to casually shift blame to nonparties. Moreover, the goal of fairness that underlies our adoption of comparative fault is not met when a plaintiff is free to shift to some defendants the fault which is properly allocated to other nonparties. Cf. Estate of Hunter v. General Motors Corp., 729 So. 2d 1264, 1273 (Miss. 1999) ("It would be patently unfair in many cases to require a defendant to be 'dragged into court' for the malfeasance of another and to thereupon forbid the defendant from establishing that fault should properly lie elsewhere.").

With our decision today, we join the vast majority of comparative fault jurisdictions that broadly permit allocation of fault to all persons involved in an injury-causing event.[7] We note that

---

[7] See, e.g., Ariz. Rev. Stat. § 12-2506A (1998); DaFonte v. Up-Right, Inc., 828 P.2d 140, 141 (Cal. 1992); Painter v. Inland/Riggle Oil Co., 911 P.2d 716, 719 (Colo. Ct. App. 1995); Y.H. Inv., Inc. v. Godales, 690 So. 2d 1273, 1278 (Fla. 1997); Espaniola v. Cawdrey Mars Joint Venture, 707 P.2d 365, 372-73 (Haw. 1985); Pocatello Indus. Park Co. v. Steel West Inc., 621 P.2d 399, 403 (Idaho 1980); Bofman v. Material Serv. Corp., 466 N.E.2d 1064, 1071 (Ill. App. Ct. 1984); Ind. Code § 34-51-2-7(b)(1) (1999); Brown v. Keill, 580 P.2d 867, (Kan. 1978); La. Civ. Code Ann. art. 2323 (West 1997); Lines v. Ryan, 272 N.W.2d 896, 902-02 (Minn. 1978); Estate of Hunter v. General Motors Corp., 729 So. 2d 1264, (Miss. 1999); Sena v. N.M. State Police, 892 P.2d 604, 607 (N.M. Ct. App. 1995); Haff v. Hettich, 593 N.W.2d 383, 388 (N.D. 1999); Bode v. Clark Equip. Co., 719 P.2d 824, 826 (Okla. 1986); Utah Code Ann. § 78-27-

these plaintiffs are not left without a remedy. The same statute that precludes the imposition of liability on State employees also provides the plaintiff with an opportunity to seek damages against the State before the Tennessee Claims Commission. See Tenn. Code Ann. § 9-8-307(a) (1999). Because damages awarded by the Claims Commission are capped at $300,000 per claimant and $1,000,000.00 per incident, see id. § 9-8-307(e), the plaintiffs must bear the burden of not collecting those damages which exceed the statutory amounts. This result, however, is not a product of any unfairness with the system of comparative fault. Rather, it is the result which follows from the General Assembly's grant of immunity to State employees, and any modification must necessarily be legislative, not judicial.

## CONCLUSION

In summary, we hold that when a defendant raises the nonparty defense in a negligence action, a trier of fact may allocate fault to immune nonparties. Moreover, we limit the application of our decisions in Snyder v. LTG Lufttechnische GmbH, 955 S.W.2d 252 (Tenn. 1997), and Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79 (Tenn. 1996), to workers' compensation cases. Accordingly, the judgment of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

Costs of this appeal are taxed to the appellees, James and Forestine Carroll.

 

_____
WILLIAM M. BARKER, JUSTICE

---

38 ( Supp. 1999); Wash. Rev. Code Ann. § 4.22.070(1) (1999); Cline v. White, 393 S.E.2d 923, 925 (W. Va. 1990); Connar v. West Shore Equip. of Milwaukee, Inc., 227 N.W.2d 660, 662 (Wis. 1975); Board of County Comm'rs v. Ridenour, 623 P.2d 1174, 1191 (Wyo. 1981).