IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 8, 2004 Session

## JENNIFER L. BISCAN, Et Al. v. FRANKLIN H. BROWN, Et Al.

**Appeal by Permission from the Court of Appeals
Circuit Court for Davidson County
No. 98C-2721 Carol Soloman, Judge**

---

**No. M2001-02766-SC-R11-CV - Filed March 30, 2005**

---

FRANK F. DROWOTA, III, C.J., concurring in part, dissenting in part.

I fully agree with the majority's conclusion that evidence of Jennifer Biscan's prior experiences with alcohol, including her juvenile court citations, was properly excluded at trial. I also fully agree that Paul Worley owed a duty of reasonable care to Jennifer Biscan. However, I do not agree with the majority's analysis concerning the apportionment of fault to Dana Biscan. I write separately to explain how, in my view, the majority's analysis of this issue contradicts the goal of achieving fairness under comparative fault by linking liability to fault.

I.

In McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), this Court adopted a modified system of comparative fault. The goal of McIntyre and all of this Court's subsequent comparative fault decisions has been achieving fairness by linking liability to fault. See Ali v. Fisher, 145 S.W.3d 557, 563-64 (Tenn. 2004); Carroll v. Whitney, 29 S.W.3d 14, 20 (Tenn. 2000); McIntyre, 833 S.W.2d at 56. The objective has been to reconcile a plaintiff's interest in being made whole with a defendant's interest in paying only that percentage of damages for which that particular defendant is responsible. Brown v. Wal-Mart Discount Cities, 12 S.W.3d 785, 787 (Tenn. 2000). In other words, linking liability to fault means that a defendant's liability will be commensurate with his or her actual degree of fault.

Four years after McIntyre was decided, the case of Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79 (Tenn. 1996), provided us with our first opportunity to decide whether under Tennessee's comparative fault system fault could be assigned to an immune tortfeasor. Specifically, we addressed the question of whether fault could be assigned to an immune employer in an employee's third-party tort action arising out of a work-related injury. We held in Ridings that employers which were immune from tort liability by virtue of the workers' compensation laws could not be included

in the assessment of fault because the "rationale of McIntyre postulates that fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort." Id. at 81. This holding was subsequently reaffirmed in another case in which we explained that the legislature, through the grant of tort immunity to employers, had already determined that for policy reasons an employer may not be the proximate, or legal, cause of an employee's work-related injuries. Snyder v. LTG Lufttechnische GMbH, 955 S.W.2d 252, 256 (Tenn. 1997).

Shortly after Snyder reaffirmed Ridings, we decided Carroll v. Whitney, 29 S.W.3d 14 (Tenn. 2000). In Carroll, the question was whether fault could be apportioned to immune tortfeasors other than immune employers.[1] We held that fault could be apportioned to immune nonparties in order to link liability with fault and thereby achieve the fairest possible result. We explained that "we would either have to exclude evidence of an immune nonparty's conduct and thereby blindfold the jury to relevant evidence or we would have to force a jury to allocate fault between parties who were not wholly responsible. This is a choice that we decline to make." Id. at 19. Furthermore, we explained that neither the holding of McIntyre nor its underlying rationale limits the attribution of fault only to persons against whom the plaintiff has a cause of action in tort. Id. at 17-18.[2] Thus, not wanting to undermine the "fair and tight fit" between fault and liability when some tortfeasors are excluded from the apportionment of fault, we joined "the vast majority of comparative fault jurisdictions that broadly permit allocation of fault to all persons involved in an injury-causing event." Id. at 21. This holding was subsequently reiterated in another case, Johnson v. LeBonheur Children's Med. Ctr., 74 S.W.3d 338, 346 (Tenn. 2002), in which we stated that "fault could be apportioned to a nonparty, notwithstanding that the nonparty was immune from suit."

In Dotson v. Blake, 29 S.W.3d 26 (Tenn. 2000), we expanded the rule adopted in Carroll to include tortfeasors protected from liability by an affirmative defense, namely, a statute of repose. In Dotson, we rejected the notion, now accepted by the majority, that fault may be assigned to a nonparty tortfeasor only if there is a statute granting immunity. We explained that treating the situation in Dotson any differently from the situation in Carroll would "require drawing difficult and subtle distinctions, if not artificial ones, making for an unworkable standard in this important area of comparative fault." Id. at 29. Accordingly, we concluded in Dotson that fault could be assigned not only to those tortfeasors who were immune from liability, but also to those tortfeasors who were "effectively immune from liability" by virtue of an affirmative defense. Id. "Otherwise, liability might be imposed disproportionally to fault, a result plainly inconsistent with our comparative fault scheme." Id.

II.

---

[1]Carroll was a medical malpractice case in which the jury assigned fault to physicians who were immune from liability because they were employees of the State.

[2]Despite disagreeing with the rationale of Ridings and Snyder, those cases were not overruled in Carroll because of the unique nature of an employer's right of subrogation in workers' compensation cases. Carroll, 29 S.W.3d at 19.

As the foregoing discussion illustrates, this Court has been careful to craft a system of comparative fault which remains true to the goal of linking liability to fault. However, as explained below, the majority's resolution of the comparative fault issue in this case is inconsistent with that goal.

The majority correctly recognizes that Tennessee Code Annotated section 57-10-101 makes it "impossible for one who has been injured by an intoxicated person to state a claim for negligence against the person or entity who furnishes alcohol because the statute removes, as a matter of law, the required element of legal causation." Thus, the majority finds that Dana Biscan cannot be held liable for Jennifer Biscan's injuries. I agree that section 101 precludes a finding of legal liability on the part of Dana Biscan. But then the majority concludes that "[s]ince Dana cannot, as a matter of law, be at fault for Jennifer's injuries, it would have been error to allow the jury to apportion fault to her." Citing Carroll, the majority notes that this result would be different were Dana protected by a statute making her immune from suit. The majority reasons that in enacting section 101, "the legislature did not make persons or entities who furnish alcohol immune from suit; rather, the legislature determined that furnishing alcohol is not the proximate cause of injuries inflicted by an intoxicated person. Thus, the effect of the provision is to make a person or entity who furnishes alcohol immune from fault as well as immune from liability."

I disagree that section 101 precludes allocating fault to Dana. As explained above, Carroll, Johnson, and Dotson make clear that in order to achieve the fairest result possible by linking liability with fault, fault may be assigned to tortfeasors who are immune or effectively immune from liability. Section 101 makes Dana effectively immune because her conduct cannot be the legal cause of Jennifer's injuries. Dana cannot be held liable just like the tortfeasors in Carroll and Dotson could not be held liable. The Court in Carroll and Dotson nevertheless allowed fault to be assigned to all of the tortfeasors in order to avoid imposing liability disproportionately to fault. Instead of using the same approach to resolve this case, the majority has made the very choice which we declined to make in Carroll – either "exclude evidence of an immune nonparty's conduct and thereby blindfold the jury to relevant evidence or . . . force a jury to allocate fault between parties who were not wholly responsible." Carroll, 29 S.W.3d at 19. By disallowing consideration of Dana's fault, the majority has blindfolded the jury to relevant evidence and forced the allocation of fault between parties who are not wholly responsible.

Not only is the majority's opinion inconsistent with the goal of linking liability to fault, the opinion departs from Dotson's rejection of the notion that fault may be assigned to a nonparty tortfeasor only if there is a statute granting immunity. The tortfeasors in Dotson were protected from liability by an affirmative defense – a statute of repose – not by a statute granting blanket immunity. Rather than following the rule and rationale adopted in Dotson, the majority has cast serious doubts on the continued viability of that case. Indeed, the majority opinion ignores Dotson altogether.

Furthermore, the majority's analysis is flawed because it is based on the premise that fault can only be assigned to those tortfeasors against whom the plaintiff has a cause of action. The majority reasons that fault cannot be assigned to Dana because section 101 does not "merely restrict

the remedy for a cause of action, but [removes] that cause of action entirely." This very notion was expressly rejected in Carroll, in which we said that "neither the holding of [McIntyre] nor its underlying rationale limits the attribution of fault only to persons against whom the plaintiff has a cause of action in tort." Carroll, 29 S.W.3d at 18. By likewise abandoning the rationale of Carroll, the majority has created yet another inconsistency in this important area of the law.

Finally, the majority insists that Dana is "statutorily without fault" and therefore the courts "should defer to the legislature's policy decision to eliminate the fault of persons covered by section 57-10-101." From what source this notion is derived is unclear, for section 101 precludes the imposition of *legal* responsibility upon Dana. The statute says nothing about the attribution of *fault*. Indeed, section 101 was passed six years before Tennessee became a comparative fault state. Thus, contrary to the majority's assertion, the legislature did not make a policy decision to eliminate the *fault* of persons covered by section 101.

In the final analysis, regardless of whether Dana is protected by a statute making her immune or by one such as section 101 that precludes legal responsibility, the result is the same – Dana cannot be held liable. To this extent, the present case is no different from Carroll and Dotson. Accordingly, there is no reason to adopt an analysis contrary to the analyses used in those cases. The majority's opinion will pave the way for the very problem which we sought to avoid in Dotson – requiring the bench and bar to draw "difficult and subtle distinctions, if not artificial ones, making for an unworkable standard in this important area of comparative fault." Dotson, 29 S.W.3d at 29. I believe that the majority's decision needlessly injects confusion into previously settled law.

III.

The majority's abrupt departure from Carroll, Johnson, and Dotson is inconsistent with our decision in McIntyre and undermines the consistency and reliability of this Court's subsequent decisions in the area of comparative fault. I would adhere to the rule adopted in Carroll and reiterated in Johnson and Dotson and find that although Dana may be insulated from liability under section 101, the jury may nevertheless consider her fault in determining the fault of all of the parties. "Otherwise, liability might be imposed disproportionately to fault, a result plainly inconsistent with our comparative fault scheme." Dotson, 29 S.W.3d at 29.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE