IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 2006 Session

## JERRY T. TROUP, JR. v. FISCHER STEEL CORPORATION

**An Appeal from the Circuit Court for Shelby County**
**No. CT-001249-01      D'Army Bailey, Circuit Judge**

---

**No. W2005-00913-COA-R3-CV - Filed August 10, 2006**

---

This is a personal injury action involving comparative fault. At a warehouse construction site, the defendant steel subcontractor cut a hole in the roof of the partially constructed warehouse. A temporary cover was put over the hole. A week later, the plaintiff employee of a roofing subcontractor fell through the hole and sustained serious injuries. The plaintiff received full workers' compensation benefits from his immediate employer, the roofing subcontractor. Subsequently, the plaintiff filed a personal injury lawsuit against the defendant steel subcontractor. The steel subcontractor then sought to assert fault against the general contractor in charge of the entire warehouse construction project. The steel subcontractor filed a motion *in limine* to assert fault against the nonparty general contractor. The motion was denied and the case proceeded to a jury trial. At the conclusion of the trial, the jury awarded the plaintiff $546,000. The defendant steel subcontractor now appeals, asserting numerous errors by the trial court, including error in precluding the steel subcontractor from asserting fault against the general contractor. We reverse the trial court's denial of the motion *in limine,* vacate the judgment, and remand, finding that the steel subcontractor should have been permitted to assert fault against the general contractor.

### Tenn. R. App. P. 3; Judgment of the Circuit Court is Reversed, Vacated and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Stephen C. Barton and Kevin Baskette, Memphis, Tennessee, for Appellant/Defendant Fischer Steel Corporation.

David G. Mills, Cordova, Tennessee, for Appellee/Plaintiff Jerry T. Troup, Jr.

### OPINION

This appeal arises out of a personal injury action brought by Plaintiff/Appellee Jerry T. Troup, Jr. ("Troup") against Defendant/Appellant Fischer Steel Corporation ("Fischer Steel"), a Tennessee corporation, for injuries Troup suffered in a dire fall at a warehouse construction work site in Memphis, Tennessee. The incident occurred on April 2, 1997.

Troup was employed by John H. Jolly Roofing Supply, Incorporated ("Jolly Roofing"), the roofing subcontractor at the construction site. At the time of the accident, Troup had been working for Jolly Roofing for about a month. Troup began working at the construction site as a roofer's helper a couple of days prior to his accident.

Belz Enterprises ("Belz") was the general contractor for the warehouse construction, and Fischer Steel was retained as a steel subcontractor at the job site. On March 26, 1997, Fischer Steel cut holes in the roof of the partially-constructed warehouse for the installation of heating and air conditioning units. After Fischer Steel cut the holes in the roof, it put unsecured temporary covers over the openings in anticipation that the heating and air conditioning units would be delivered the next day and installed into the holes. Fischer Steel then left the construction site. However, contrary to Fischer Steel's expectations, the heating and air conditioning units were not installed into the holes in the roof at that time. At some point between March 26, 1997, and the accident on April 2, 1997, the temporary covers placed over the holes by Fischer Steel were removed and wooden pallets were placed over the holes. These wooden pallets held Jolly Roofing's roofing materials.

On the afternoon of April 2, 1997, Troup and a co-worker were instructed to go up on the roof of the warehouse and pick up the pallets with roofing materials on them and connect them to a crane. As Troup and the co-worker lifted one of the pallets with roofing materials on it, Troup noticed the hole underneath the pallet and, while attempting to set the pallet back down, fell through the hole. Troup fell between thirty and forty feet to the concrete floor below, and suffered serious injuries to his wrist, ankle, and back. He was evacuated from the work site by helicopter, and spent approximately seven days in the hospital, undergoing multiple surgeries.

Troup initially filed this personal injury lawsuit in 1997, but voluntarily dismissed it in August 2000. Subsequently, on February 28, 2001, Troup re-filed the lawsuit against, *inter alia*, Fischer Steel[1] in the Shelby County Circuit Court in Memphis, Tennessee. The complaint asserted that Fischer Steel negligently maintained and constructed the roof of the warehouse in such a manner as to create an unreasonably dangerous condition which was not open or obvious to Troup. The complaint alleged four negligent acts or omissions: (1) failure to properly inspect the holes in the roof; (2) failure to install curbs or caps on the holes; (3) failure to adequately cover the holes so that they would not later become hazardous; and (4) failure to warn others of the holes. Based on these allegations, Troup sought $750,000 in damages, including punitive damages.

On March 20, 2001, Fischer Steel filed its answer. While admitting many of the general factual allegations in the complaint, Fischer Steel denied that it had acted negligently, denied that its actions had directly and proximately caused Troup's injuries, and denied that it acted recklessly or in conscious disregard of an unjustifiable risk. Fischer Steel averred that the duty to cover the holes in the roof had been delegated to, and assumed by, Belz, Jolly Roofing, and/or co-defendant

---

[1] Troup also named Stephens Brothers, Incorporated, the HVAC contractor on the project, as a defendant in the lawsuit. Stephens Brothers, Inc. was dismissed from this lawsuit on summary judgment in October 2001.

Stephens Brothers, Inc.[2] Consequently, Fischer Steel maintained, it had no continuing duty to cover the hole through which Troup fell. Fischer Steel argued that the removal of the temporary covers that Fischer Steel placed over the holes and the placement of the wooden pallets over the holes constituted an intervening cause of the accident, barring any recovery against Fischer Steel. Fischer Steel also asserted that Troup was negligent and that his negligence should reduce any potential recovery. Fischer Steel relied on the doctrine of comparative fault, asking that the negligence of Belz, Jolly Roofing, and Stephens Brothers be assessed in determining liability.

In April 2001, Jolly Roofing's workers' compensation insurance carrier, Granite State Insurance Company ("Granite State Insurance"), filed a motion to intervene in the litigation, pursuant to Tennessee's Workers' Compensation Act, Tennessee Code Annotated section 50-6-112(c)(1), in order to protect its statutory subrogation rights in the event Troup recovered damages. In the motion, Granite State Insurance stated that Troup had previously made a claim against Jolly Roofing and Granite State Insurance for worker's compensation benefits for the injuries he sustained in April 1997. As a result, Granite State Insurance paid worker's compensation benefits for Troup's medical expenses, temporary total disability benefits, and permanent partial benefits. On May 1, 2001, the trial court entered an order granting Granite State Insurance's motion to intervene.

Discovery ensued. Both Stephens Brothers and Fischer Steel filed motions for summary judgment, seeking dismissal of Troup's claims against them. Stephens Brothers' motion was granted; Fischer Steel's was not. Eventually, the jury trial was set for January 24, 2005.

On January 10, 2005, Fischer Steel filed a motion *in limine* to confirm its right at trial to argue comparative fault against Jolly Roofing and Belz. In response, Troup argued that Fischer Steel was not legally entitled to assert comparative fault against either Jolly Roofing or Belz. Fischer Steel was limited, Troup maintained, "to show[ing] that either Jolly Roofing or Belz Construction Company or both were 'the legal cause' of [Troup's] injuries." Granite State Insurance responded to Fischer Steel's motion *in limine* as well, arguing that Fischer Steel should not be permitted to assert comparative fault against either Jolly Roofing or Belz:

> [B]ased upon the Tennessee Supreme Court's opinions in ***Ridings v. Ralph M. Persons Company***, 914 S.W.2d 79 (Tenn. 1996), ***Snyder v. LTG Luefttechnisthe***, 955 S.W.2d 252 (Tenn. 1997) and ***Carroll v. Whitney***, 29 S.W.3d 14 (Tenn. 2000), this court, as a matter of law and statutory construction should deny [Fischer Steel's] motion seeking confirmation of its right to allege comparative fault against [Jolly Roofing] and [Belz] as said entities are statutorily immune from suit under T.C.A. § 50-6-108 and T.C.A. § 50-6-113(a) as [Troup's] employer and statutory employer respectively.

On January 24, 2005, the trial court entered an order denying Fischer Steel's motion *in limine*. The trial court held that Fischer Steel would not be permitted to allege comparative fault against either

---

[2]This was prior to dismissal of Stephens Brothers from the lawsuit.

Jolly Roofing or Belz. The trial court's order did, however, state that Fischer Steel would be permitted to put on proof and argue that the acts or omissions of Jolly Roofing and Belz were the cause in fact of Troup's injuries. Therefore, although the jury would be permitted to hear evidence indicating that Jolly Roofing and/or Belz were the cause in fact of Troup's injuries, the jury would not be permitted to apportion fault to either Jolly Roofing or Belz.

The jury trial commenced on January 24, 2005, and concluded on February 4, 2005, producing a voluminous record of testimony. On February 4, 2005, after hearing the evidence, the jury returned a verdict in favor of Troup, awarding damages in the amount of $780,000. It found that Fischer Steel was seventy percent at fault for Troup's injuries, and that Troup himself was thirty percent at fault. Consequently, the judgment against Fischer Steel was seventy percent of the total damage award, or $546,000. On February 25, 2005, the trial court entered a judgment on the jury verdict. In the order, the trial court awarded post-judgment interest at the statutory rate of ten percent per annum, levied costs against Fischer Steel, and found that the intervening plaintiff, Granite State Insurance Company, was entitled to its lien of $125,568.35.

On March 10, 2005, Fischer Steel filed a motion to set aside the judgment, or, in the alternative, a motion for a new trial, raising twenty-two points of alleged error. The motion was denied on April 5, 2005. On April 13, 2005, Fischer Steel filed its notice of appeal.

On appeal, Fischer Steel alleges fourteen errors by the trial court: (1) precluding Fischer Steel from arguing comparative fault against Belz; (2) permitting Troup's medical expert, Dr. Michael Hellman, to testify; (3) failing to grant Fischer Steel's motions for directed verdict; (4) precluding Fischer Steel from arguing comparative fault against Troup during closing arguments; (5) refusing to permit Fischer Steel's attorney to use Troup's deposition testimony for a limited purpose; (6) failing to define and explain Fischer Steel's cause in fact defense to the jury; (7) declining to give a superseding cause jury charge as requested by Fischer Steel; (8) instructing the jury that the legal responsibility of Jolly Roofing and Belz would be determined at a later time or had already been determined in another forum; (9) allowing Troup to increase his *ad damnum* at the conclusion of the proof; (10) failing to dismiss jurors number 6 and number 12; (11) permitting Troup to testify about matters beyond his competence as a lay witness; (12) allowing testimony by Troup's vocational expert that was factually unfounded and misleading; (13) permitting the jury to hear testimony from a witness' deposition regarding OSHA safety standards, in violation of the trial court's own order; and (14) telling the jury during defense counsel's cross-examination of Fischer Steel employee Daniel Tomcho that defense counsel, but not Troup's counsel, could ask leading questions of the witness.

Troup raises issues on appeal as well. On appeal, Troup argues that the trial court erred in declining to rule that, as a matter of law, Troup was not negligent, and in refusing to grant Troup's request at trial to amend the *ad damnum* clause of his complaint.

On appeal, the findings of fact by a jury in a civil action will only be set aside if there is no material evidence to support the verdict. Tenn. R. App. P. 13(d). The trial court's legal conclusions

-4-

and its application of the law to the facts in this case are questions of law, reviewed *de novo*, and are not entitled to any presumption of correctness. ***See Carter v. Patrick***, 163 S.W.3d 69, 74 (Tenn. Ct. App. 2004).

We consider first Fischer Steel's argument that the trial court erred in denying its motion *in limine* to confirm Fischer Steel's rights to argue comparative fault against Belz.[3] Fischer Steel contends that the trial court erred by holding, as a matter of law, that Belz was immune from suit under the Tennessee Workers' Compensation Act. Nevertheless, even assuming that Belz was immune from suit, Fischer Steel argues that the jury should have been permitted to assess fault against Belz in determining the comparative fault of Fischer Steel.

Here, Troup's injuries were sustained while he was employed by Jolly Roofing, working at Belz' worksite. Troup received full workers' compensation from Jolly Roofing and its workers' compensation insurance carrier, Granite State Insurance. Subsequently, Troup brought the instant personal injury lawsuit against, among others, Fischer Steel for his damages attributable to Fischer Steel's alleged negligence. Fischer Steel's answer asserted the doctrine of comparative fault against Troup, Jolly Roofing and Belz; Troup denied that comparative fault was applicable to either Jolly Roofing or Belz. Belz was never made a party to the litigation, and, ultimately, the trial court held that Fischer Steel could not allege comparative fault against Belz and Jolly Roofing because both were immune from suit under Tennessee Code Annotated sections 50-6-108 and 50-6-113.

A brief review of the pertinent workers' compensation statutes would be helpful to our analysis at this point. Under the Tennessee Workers' Compensation Law, employers are required to pay compensation for an employee's personal injury or death by accident arising out of and in the course of employment, without regard to fault. T.C.A. § 50-6-103(a). The employee's remedies under the Workers' Compensation statutes are exclusive. ***Id.*** § 50-6-108(a). Thus, an employee injured in an accident during the course of his employment may recover only workers' compensation benefits from his employer; the statutes bar the employee from filing a personal injury lawsuit for damages against the employer. ***Valencia v. Freeland and Lemm Const. Co.***, 108 S.W.3d 239, 242 (Tenn. 2003).

Even when the employee's injury is compensated under the workers' compensation law, however, the statutes expressly do not preclude the employee from filing a lawsuit "against some person other than the employer to pay damages. . . ." T.C.A. § 50-6-112(a). If the employee recovers damages from such a third party, the employer then has a subrogation lien against the recovery for the amount of the workers' compensation benefits paid. ***Id.*** § 50-6-112(c).

Under certain circumstances, a principal or intermediate contractor may be liable for workers' compensation benefits when an employee of a subcontractor suffers on-the-job injuries arising from an accident. The Act provides that the principal contractor shall be liable for workers' compensation benefits to an injured employee, to the same extent as the immediate employer, if that employee was

---

[3]Fischer Steel does not appeal the trial court's denial of its motion *in limine* as to Jolly Roofing.

injured while performing work for a subcontractor of the principal and while engaged in the subject matter of the contract. *Id*. § 50-6-113(a); *see Randolph v. Eastman Chem. Co.*, 180 S.W.3d 552, 557 (Tenn. Ct. App. 2005). The employee must first seek compensation from the immediate employer. If the immediate employer does not fully compensate the employee under the Workers' Compensation laws, the employee may then bring an action for such benefits against the principal or intermediate subcontractor. T.C.A. § 50-6-113(c). If the employee receives full workers' compensation benefits from the immediate employer, however, the employee is barred from recovering any compensation benefits from the principal or intermediate contractor. *Id*. A principal or intermediate contractor who pays workers' compensation benefits to an employee may recover the amount paid "from any person who, independently of this section, would have been liable to pay compensation to the injured employee. . . ." *Id.* § 50-6-113(b).

Since the workers' compensation statutes make the principal contractor liable for workers' compensation benefits payable to a subcontractor's employee, to the same extent as the subcontractor, the principal contractor is not considered a "third party" subject to a common-law action by the employee under Tennessee Code Annotated section 50-6-112. Thus, the principal is also effectively "immune" from suit by the injured employee, even if the principal contractor did not pay workers' compensation benefits to the injured employee. *See, e.g., Posey v. Union Carbide Corp.*, 510 F. Supp. 1143 (M.D. Tenn. 1981)**, aff'd,** 705 F.2d 833 (6th Cir. 1983); *Manning v. Rentenbach Eng'g Co.*, 625 S.W.2d 718 (Tenn. Ct. App. 1981)**.**

Having set out the applicable law under the Tennessee Workers' Compensation statutes, we now turn to the Tennessee common law on comparative fault, to determine whether the trial court erred in holding that the jury was precluded from assessing fault against the principal contractor, Belz. Under the facts of this case, this presents an issue of first impression for this Court.

In 1992, in an attempt to more closely link liability with fault in negligence actions, the Tennessee Supreme Court cast aside the deeply rooted legal doctrine of contributory negligence and adopted the modified comparative fault system. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). As a consequence, the doctrines of remote contributory negligence, last clear chance, and joint and several liability were rendered obsolete. *Id*. at 57-58. Modified comparative fault requires that, so long as the plaintiff's negligence is less than the defendant's negligence, the plaintiff may recover damages commensurate with the proportion of the total negligence attributable to the defendant being sued. *Id*. at 57. In considering the fault of a nonparty to the litigation, the Tennessee Supreme Court stated:

> [F]airness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign this nonparty the percentage of the total negligence for which he is responsible.

*Id*. at 58. Thus, generally, a defendant accused of negligently causing the injuries of a plaintiff could assert the fault of a nonparty in an effort to mitigate the defendant's liability, even though the plaintiff would not recover against that nonparty in the immediate litigation. *Id*.

However, in subsequent litigation involving the workers' compensation laws, the Court adopted a limited exception to the general rule that fault may be assessed against a nonparty. In ***Ridings v. Ralph M. Parsons, Company***, 914 S.W.2d 79 (Tenn. 1996), the Tennessee Supreme Court considered whether a defendant could assert, as an affirmative defense, that a nonparty employer caused or contributed to injuries suffered by a plaintiff in the course of his employment. Ultimately, the Court ruled:

> [O]nly a nonparty against whom the plaintiff has a cause of action can be made a party. Since the plaintiff's employer cannot be made a party to the plaintiff's tort action for personal injuries sustained in the course and scope of his employment, the rationale of ***McIntyre***, both as to principle and procedure, will not permit fault to be attributed to the plaintiff's employer.

***Ridings***, 914 S.W.2d at 82. Distinguishing between cause in fact and proximate or legal cause, the Court held that "fault is limited to the plaintiff and those against whom the plaintiff has a cause of action. . . ." *Id*. at 83.

In 1997, the Court entertained a challenge to ***Ridings*** in ***Snyder v. LTG Lufttechnische, GmbH***, 955 S.W.2d 252 (Tenn. 1997). In ***Snyder***, the Court considered whether the defendant manufacturer and seller in a products liability action could introduce evidence at trial that the employer's alteration, change, improper maintenance, or abnormal use of the defendants' product proximately caused or contributed to the plaintiff employee's injuries. ***Snyder***, 955 S.W.2d at 253. Referring to the holding in ***Ridings***, the Court concluded that the products liability defendants could not introduce evidence that the employer proximately caused the plaintiff's injuries. *Id*. However, the Court held that the jury could nevertheless consider whether the employer's alterations, changes, improper maintenance, or other abnormal use of the defendants' product was a cause in fact of the plaintiff's injuries:

> [P]roducts liability defendants in a suit for personal injuries based on allegations of negligence and strict liability in tort may introduce relevant evidence at trial that the plaintiff's employer's alteration, change, improper maintenance, or abnormal use of the defendant's product was a cause in fact of the plaintiff's injuries. Put another way, the jury may consider all evidence relevant to the event leading up to the incident that injured the plaintiff. The defendants may not, however, ask the jury to assign fault to the employer. That is, the defendants may not take the legal position that the employer's actions were the legal cause of the plaintiff's injuries. The jury should be instructed that it may consider the actions of the employer only in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants. Also, the jury should be instructed that it may not,

in making that determination, assess fault against the employer. Finally, the trial judge should give an instruction that lets the jury know that the employer's legal responsibility will be determined at a later time or has already been determined in another forum.

*Id.* at 256-57.

Both *Snyder* and *Ridings* were later scrutinized in *Carroll v. Whitney*, 29 S.W.3d 14 (Tenn. 2000). *Carroll* was a medical malpractice action arising out of the death of a fourteen-month-old girl who was admitted to a hospital. The parents filed suit against the hospital and various medical personnel, including two physicians who were residents. The residents were held to be immune from suit because they were state employees. The plaintiffs voluntarily dismissed the lawsuit and re-filed the suit against the non-immune defendants. Meanwhile, they filed a claim against the State in the Claims Commission for the actions of the residents.

At the trial, the defendants argued that the residents' negligence, rather than the defendants' conduct, was the cause of the child's death. At the conclusion of the evidence, the jury was instructed to apportion fault among the defendants, the residents and the plaintiffs. The jury allocated all of the fault to the nonparty residents, and the plaintiffs appealed. The Court granted the appeal "to decide whether the trial court erred in allowing nonparties who were immune from suit to appear on a jury verdict form." *Id.* at 15.

The *Carroll* Court reviewed its earlier decision in *Ridings v. Ralph M. Parsons Company*, wherein the Tennessee Supreme Court ruled that, because "only a nonparty against whom the plaintiff has a cause of action can be made a party," and an immune employer cannot be made a party to the plaintiff's personal injury action for damages arising out of events occurring in the scope of his employment, fault could not be attributed to the immune employer. *Ridings*, 914 S.W.2d at 82. The *Carroll* Court noted that the analysis in *Ridings* relied on the distinction in *McIntyre v. Ballentine* between parties and nonparties. It explained:

> Our conclusion [in *Ridings*] was supported by "[t]he rationale of *McIntyre* which postulates that fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort." A careful reading of *McIntyre*, however, suggests that neither the holding of the case nor its underlying rationale limits the attribution of fault only to persons against whom the plaintiff has a cause of action in tort. Our treatment of nonparties in *McIntyre* simply examined a plaintiff's ability to recover damages from a nonparty, and our holding was limited accordingly.

*Carroll*, 29 S.W.3d at 18 (quoting *Ridings*, 914 S.W.2d at 81). Additionally, the *Carroll* Court noted its holding in *Snyder* that a defendant could not introduce evidence that an immune employer proximately caused or contributed to an injury, but the jury could consider any evidence relating to the incident that would assist the trier of fact in determining whether the plaintiff met his burden of proof as to "but-for" causation. *Id*.

The *Carroll* Court observed that fairness required that defendants in a negligence action be permitted to assert that a nonparty caused or contributed to the plaintiff's injury, hearkening back to the stated desire in *McIntyre v. Ballentine*, to achieve "a tighter fit between liability and fault." *Id.* at 16-17. Ultimately, the *Carroll* Court held under the facts of that case "that when a defendant raises the nonparty defense in a negligence action, a jury may generally apportion fault to immune nonparties." *Id.* at 19. The *Carroll* Court stated pointedly that it was not overruling *Ridings* and *Snyder*. *Id.* To reconcile *Carroll* with the earlier decisions, the Court explained that *Ridings* and *Snyder* would "remain uniquely applicable with regard to the allocation of fault to employers in workers' compensation cases." *Id.* This limited exception in workers' compensation cases was necessary, the Court found, to achieve fairness to the employee. *Id.* A successful employee's recovery would be reduced by operation of the Workers' Compensation Act, as would the employer's obligation for compensation. *Id.* The Court observed that under section 50-6-112(a), an employer who has paid full workers' compensation benefits to its employee is entitled to a subrogation lien against the employee's recovery from any third party tortfeasor who may bear some responsibility for the employee's injuries. *Id.* The Court used a hypothetical to illustrate the unfairness that would result from a decision not to retain a limited workers' compensation exception:

> An employee injured by a piece of equipment may have a cause of action for products liability against the machine's manufacturer. However, the manufacturer could assert at trial that the employer altered the machine, and that this alteration caused the employee's injury. A jury, acting on this use of the nonparty defense, could then allocate fault between the manufacturer and the immune employer, thereby reducing the employee's recovery. Subsequently, the employer could exercise its right of subrogation with regard to the damages assessed against the manufacturer and recovered by the employee. Essentially then, the employer's right of subrogation would defeat the employee's statutory right to seek damages from other tortfeasors.

*Id.* To avoid this result, the Court held that the rule in *Snyder* and *Ridings* would be retained only in the workers' compensation context. *Id.* However, in other comparative fault cases, the Court held that "a jury may still allocate fault to other tortfeasors against whom a plaintiff, *for any reason*, could not recover." *Id.* (emphasis added). Therefore, the allocation of fault to immune nonparties was permitted in most cases, with the application of *Snyder* and *Ridings* limited to workers' compensation cases. *Id.* at 22.

We are left now to apply *Carroll*, *Ridings*, *Snyder*, and *McIntyre* to a workers' compensation case in which the defendant seeks to allocate fault against a principal contractor, not the plaintiff's employer. First, it must be noted that Belz, as the principal contractor, is considered immune from suit to the same extent as Troup's employer, Jolly Roofing.[4] *See, e.g., Manning*, 625

---

[4] For this reason, we find *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005), cited by Troup, to be inapplicable. In *Biscan*, the Court emphasized that the statute, T.C.A. § 57-10-101, did not make the person who furnishes alcohol immune from suit; rather, the statute provides that the furnishing of an alcoholic beverage is not "the proximate cause of injuries inflicted upon another by an intoxicated person." Thus, *Biscan* is clearly distinguishable.

S.W.2d 718. In this case, however, Belz was not required to pay any portion of Troup's workers' compensation benefits, and therefore would, under no circumstances, have a subrogation lien against Troup's recovery from a third party such as Fischer Steel.[5] Thus, while this, like *Ridings* and *Snyder*, is a workers' compensation case, the factor emphasized in *Carroll*, namely, the operation of the employer's subrogation lien against the plaintiff's recovery, is not present. Therefore, while a jury allocating fault between Fischer Steel and the immune principal contractor Belz could reduce Troup's recovery, Belz could not then "exercise its right of subrogation with regard to the damages assessed against [Fischer Steel]," essentially defeating Troup's "statutory right to seek damages from other tortfeasors." *Carroll*, 29 S.W.3d at 19. Indeed, the *Carroll* Court noted specifically that "even in cases brought by employees against third parties, a jury may still allocate fault to other tortfeasors against whom a plaintiff, for any reason, could not recover," citing as an example a tortfeasor who successfully raised the running of a statute of limitations as a defense.

In light of these factors, we must conclude that the jury should have been permitted to allocate fault to the principal contractor, Belz. This holding accomplishes the stated objective in *McIntyre* of achieving "a tighter fit between liability and fault," while respecting the limited exception in *Ridings* and *Snyder*, based on the reasoning in *Carroll*. For these reasons, we hold that the trial court erred in denying Fischer Steel's motion *in limine* to the general contractor in charge of the construction site, Belz, and in precluding the jury from allocating fault to Belz.

In light of this holding, we reverse the trial court's decision and vacate the judgment below. Our holding pretermits all other issues raised on appeal.

The decision of the trial court is reversed, the judgment below is vacated, and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs of this appeal are assessed against Plaintiff/Appellee Jerry T. Troup, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[5] We do not address the situation in which a principal contractor such as Belz paid all or part of the workers' compensation benefits.