IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MARCH 22, 2011 Session

# BELLSOUTH TELECOMMUNICATIONS, INC. d/b/a AT&T (TN) v. SHUNDRA Y. YOUNG and MAUREEN F. KINSELLA

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-001271-08     Karen R. Williams, Judge

### No. W2010-01825-COA-R3-CV - Filed June 21, 2011

Plaintiff sued Defendants for damages arising from a motor vehicle accident. The trial court struck, from Defendants' answers, allegations regarding the comparative fault of an unidentified nonparty. However, the trial court allowed references to such nonparty at trial, and the jury assigned no fault to Defendants. Finding no error in the trial court's allowance, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Mark B. Reagan, Thomas A. Sager, Memphis, Tennessee, for the appellant, Bellsouth Telecommunications, Inc., d/b/a AT&T (TN)

Murry J. Card, Memphis, Tennessee, for the appellee, Shundra Y. Young

Melanie M. Stewart, Matthew S. Russell, Germantown, TN, for the appellee, Maureen F. Kinsella

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This case arises out of a motor vehicle accident on October 26, 2006 near the intersection of Mendenhall Road and Sanderlin Avenue in Shelby County, Tennessee. Mendenhall Road runs north and south with two lanes in each direction, plus a turning lane at the Sanderlin Avenue intersection. On the date of the accident, Defendants Maureen F. Kinsella and Shundra Y. Young proceeded southward on Mendenhall Road–Ms. Kinsella in the left lane and Ms. Young in the right lane. According to the testimony presented at trial, a white SUV abruptly left its position in the turning lane, entered Ms. Kinsella's lane, and forced her to partially swerve into Ms. Young's lane. Ms. Young then swerved to avoid Ms. Kinsella's vehicle and collided with a cross-connect box owned by Plaintiff Bellsouth Telecommunications, Inc. d/b/a AT&T ("Bellsouth"). No contact was made among the vehicles. The driver of the white SUV did not stop, and has not been identified.

On August 27, 2007, Bellsouth filed suit against Ms. Young in the Shelby County General Sessions Court for $9,221.48. A judgment apparently was entered against Ms. Young for this amount, and she appealed to the Shelby County Circuit Court. Ms. Young subsequently filed a "Motion to Dismiss or in the Alternative Motion for a More Definite Statement." In its response, Bellsouth incorporated a complaint in which it asserted counts of negligence and trespass against Ms. Young. In her answer, Ms. Young alleged the comparative fault of Ms. Kinsella, claiming that she "was confronted with a sudden emergency not of her own making when . . . [Ms. Kinsella] negligently veered into [Ms. Young's] proper lane of travel[.]" Additionally, she alleged the comparative fault of the unknown driver of the white SUV. Based on Ms. Young's answer, Bellsouth amended its complaint to name Ms. Kinsella as a defendant. Like Ms. Young, Ms. Kinsella answered by alleging the comparative fault of the unidentified driver of the white SUV.

Bellsouth moved to strike from their answers, defendants' averments regarding the white SUV, as well as Ms. Kinsella's allegations that "she was faced with a sudden emergency," and that "this accident was unavoidable." Based on the defendants' failure to sufficiently identify the driver of the white SUV, the trial court granted Bellsouth's motion, and struck "the portion[s] of Defendants' Answers which seek to assign fault to an unknown non-party tortfeasor[.]"

Bellsouth then filed a motion in limine seeking an order excluding "any testimony or reference to [an] unidentified third-party tort-feasor in the trial of this matter[.]" Following a hearing, the trial court denied Bellsouth's motion, allowing "the fact of [the white SUV to] be brought to the attention of the jury so that they may weigh it with other facts[.]" However,

the trial court stated that "[t]he jury will be advised that they cannot attribute fault to this vehicle, that they may only attribute fault to the two defendants in this case."

A jury trial concluded on May 19, 2010, with the jury assigning no fault to either Ms. Young or Ms. Kinsella. Judgment was entered on May 27, 2010. Bellsouth subsequently filed a motion for a new trial, arguing that the trial court erred in allowing the defendants to reference the white SUV at trial. The trial court denied Bellsouth's motion, and Bellsouth timely appealed.

## II. ISSUE PRESENTED

Bellsouth presents the following issue for review, restated as follows:

1.      Whether the trial court erred in allowing defendants to reference, at trial, an unidentified third-party tortfeasor.

For the following reasons, we affirm the judgment of the trial court.

## III. DISCUSSION

On appeal, Bellsouth contends that the trial court, in allowing the defendants to reference the driver of the white SUV at trial, violated the rule regarding phantom tortfeasors set forth in *Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785 (Tenn. 2000). The admissibility of evidence at trial is within the sound discretion of the trial court, and we will not overturn a trial court's decision to admit or exclude evidence without finding a clear abuse of discretion on the part of the trial judge. ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 442-43 (Tenn. 1992). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

In *Brown*, a child was injured in a Wal-Mart store when he slipped on ice and water that had been spilled on the floor. 12 S.W.3d at 785. The plaintiff sued Wal-Mart, and the jury assigned 30% of the fault to Wal-Mart and 70% of the fault to an "unknown person[,]" whom Wal-Mart claimed had left a cup of ice on the floor. *Id.* at 786. The plaintiff moved for a new trial, arguing that the jury should not have been allowed to consider the fault of the unidentified party. *Id.* The trial court agreed that the plaintiff could not recover from the "unknown person[,]" because "no one knows who to sue." *Id.* Accordingly, it overruled the

motion for a new trial but ordered the total judgment to remain intact, effectively assigning 100% of the fault to Wal-Mart. *Id.*

This Court affirmed the trial court, holding that "'[s]ince the phantom tortfeasor defense can be easily abused, we think the original defendant should be required to prove the existence of a third party whose fault contributed to the plaintiff's injuries by clear and convincing evidence.'" *Id.* (quoting *Brown v. Wal-Mart Discount Cities*, No. 01A01-9705-CV-00217, 1998 WL 44958, at *7 (Tenn. Ct. App. Feb. 6, 1998)). Because Wal-Mart failed to do so, we concluded that "'the trial judge correctly attributed all the fault to the original defendant.'" *Id.* (quoting *Brown*, 1998 WL 44958, at *7).

The Supreme Court, however, modified our judgment, holding that unless a comparative tortfeasor is sufficiently identified, fault may not be attributed to him, notwithstanding clear and convincing evidence of his existence. *Id.* at 789. The Court reasoned that Tennessee Code Annotated section 20-1-119, which allows a plaintiff, when a defendant's answer identifies an additional tortfeasor, to "'[a]mend the complaint to add the *person* as a defendant'" or "'[i]nstitute a separate action against that *person*[,]'" "contemplates that the plaintiff will actually know the identity of the alleged individual or entity." *Id.* at 788 (quoting Tenn. Code Ann. §§ 20-1-119) (emphasis added). The Court explained that although a mere description of an additional tortfeasor is sufficient during the pleading stage, "when pre-trial discovery fails to identify the 'described' comparative tortfeasor alleged in the defendant's answer" such that the plaintiff could plead and serve process on such person, "the defendant should not be allowed to argue, and the trier of fact should not be permitted to make a determination, that a percentage of fault should be attributed to the unidentified nonparty." *Id.* At 787-88. Allowing otherwise, the court concluded, would reduce a defendant's incentive to find and name additional tortfeasors, and it would "effectively impose a burden on the plaintiff to 'defend' the unidentified party." *Id.* at 789.

However, following the *Brown* decision, the Supreme Court considered the case of *Carroll v. Whitney*, 29 S.W.3d 14 (Tenn. 2000). In *Carroll*, the plaintiffs, following the death of their daughter, brought a medical malpractice action against multiple defendants, including two resident physicians. *Carroll*, 29 S.W.3d at 15-16. The residents were ultimately dismissed from the suit based on their immunity as state employees, and a cause of action was filed against the State of Tennessee in the Claims Commission for their actions. *Id.* at 16.

During the trial, the remaining defendants referred to the claim against the State and they argued that the residents caused the decedent's death. *Id.* The trial judge instructed the jury to apportion fault among the defendants, the residents, and the decedent's mother. *Id.*

The jury apportioned 70% fault to one resident, 30% fault to the other resident, and 0% fault to the defendants and the decedent's mother, and a judgment was entered consistent with the jury verdict. *Id.* On appeal, this Court reversed the judgment of the trial court and concluded that because the residents were immune from suit, fault should not have been apportioned to them. *Id.*

The Supreme Court, however, reversed this Court, finding no error by the trial court in allowing the immune parties to appear on the jury verdict form, stating that Tennessee was "join[ing] the vast majority of comparative fault jurisdictions that broadly permit allocation of fault to all persons involved in an injury-causing event." *Id.* at 15, 21 (footnote omitted). This standard, the Court announced, "is generally applicable in comparative fault cases."[1] *Id.* at 19.

The *Carroll* Court began its analysis by discussing the adoption of modified comparative fault in *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992). Under the comparative fault system, a defendant is responsible only for the percentage of damages caused by his negligence, thus achieving a "tighter fit between liability and fault." *Carroll*, 29 S.W.3d at 16 (citing *McIntyre*, 833 S.W.3d at 58). In adopting comparative fault, the Court also adopted a nonparty defense and "implictly rejected the minority position permitting allocation of fault only to parties before the court." *Id.* at 17 n.5 (citations omitted). The *McIntyre* Court stated:

> [F]airness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign this non-party the percentage of total negligence for which he is responsible. However, in order for a plaintiff to recover a judgment against such additional person, the plaintiff must have made a timely amendment to his complaint and caused process to be served on such additional person. Thereafter, the additional party will be required to answer the amended complaint.

*Id.* (quoting *McIntyre*, 833 S.W.2d at 58). "[T]he Court did not require that a cause of action be available before a jury could apportion fault to nonparties." *Id.* Instead, as explained in *Carroll*, "[a] plaintiff's ability to bring a cause of action was only important–to the extent that it mattered at all in the Court's analysis–in determining whether the plaintiff could recover damages, not whether a jury could apportion fault to a non-party. *Id.* The *McIntyre*

---

[1]As discussed below, this rule does not apply to workers' compensation cases.

Court offered guidance with regard to implementing comparative fault, but it "explicitly left the treatment of nonparty tortfeasors to another day and an 'appropriate controversy.'" *Id.* (quoting *McIntyre*, 833 S.W.3d at 60).

Such controversy was found in *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996), in which the Court considered whether the defendants could assert the contributory negligence of the plaintiff's employer when suit could not be brought against the employer due to the exclusive remedy provisions of the Workers' Compensation Law. *Id.* The Court reasoned that because the employer could not be made a party to the plaintiff's suit, fault could not be attributed to it. *Id.* (citing *Ridings*, 914 S.W.2d at 81-82). The Court's conclusion was purportedly supported by "'[t]he rationale of *McIntyre* [which] postulates that fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort.'" *Id.* at 18 (quoting *Ridings*, 914 S.W.2d at 81).

The *Ridings* holding was challenged in *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997), where a defendant in a negligence suit sought, again, to introduce evidence that the plaintiff's immune employer proximately caused or contributed to the plaintiff's injury. *Id.* (citing *Snyder*, 914 S.W.2d at 252). The Court disallowed the evidence, relying upon its statement in *Ridings* that "'a plaintiff's right to recover on allegations of negligence . . . is determined without reference to the [immune nonparty's] conduct.'" *Id.* (quoting *Ridings*, 914 S.W.2d at 84). *Snyder* "affirmed that *Ridings* was good law and that it stood for the proposition that a defendant could not introduce evidence that the plaintiff's employer proximately caused or contributed to a plaintiff's injury." *Id.* However, the *Snyder* Court "expressed concern that not allowing [evidence of the immune employer's conduct] would make discussion of the case nearly impossible, with the result that 'the jury would not hear evidence of the true facts . . . but, [would] be asked to determine fault and hence liability for damages.'" *Id.* (quoting *Snyder*, 955 S.W.2d at 256). Thus, it held that a jury could consider "any evidence relevant to the incident giving rise to the plaintiff's injury" in determining whether the plaintiff had established "but for" causation.[2] *Id.* (citing *Snyder*, 955 S.W.2d at 257).

As we stated above, the *Carroll* Court found that the trial court did not err in allowing fault to be apportioned against the non-party resident physicians. *Id.* at 15. In doing so it did not overrule *Ridings* and *Snyder*, but it limited their application to workers' compensation

---

[2]The Court cautioned the trial court to instruct the jury that evidence of the nonparty tortfeasor could not be considered for purposes of proximate causation, but it acknowledged that the "practical effect of *Snyder* was to invite trial courts to depart from the rule in *Ridings*." *Carroll*, 29 S.W.3d at 18.

cases.[3]  *Id.* at 19.  The *Carroll* Court stated that "[a] careful reading of *McIntyre* . . . suggests that neither the holding of the case nor its underlying rationale limits the attribution of fault only to persons against whom the plaintiff has a cause of action in tort."  *Id.*  Instead, the Court reasoned that *McIntyre* "simply examined a plaintiff's ability to recover damages from a nonparty, and our holding was limited accordingly."  *Id.* (citing *McIntyre*, 833 S.W.2d at 60).  The Court explained that its decision to "depart from *Ridings* and *Snyder*" was prompted, at least partially, by the fairness rationale underlying *McIntyre*.  *Id.* at 20.  The "fair and tight fit" between fault and liability is lost, it reasoned, "when some participants to an act of negligence are excluded from the apportionment of fault."  *Id.*

> Pursuant to *Snyder*, under the present system of fault allocation, a jury is permitted to hear all evidence relevant to the injury-causing event.  Yet the jury is not permitted to allocate fault to some of the participants, even though those participants may have contributed to the injury.  Given these circumstances, the likelihood is great that the jury will allocate to a defendant fault that properly lies elsewhere.  *See Kirby Bldg. Sys. v. Mineral Explorations, Co.*, 704 P.2d 1266, 1272-73 (Wyo. 1985) ("Logic dictates that, if the negligence of an actor who is not a party is not included in the comparative-negligence calculation, the percentage of negligence of defendants who are parties may be inflated . . . .").  This result would hardly promote the policy of fairness that prompted this Court to adopt comparative fault.  *Compare Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264, 1273 (Miss. 1999) ("It would be patently unfair in many cases to require a defendant to be 'dragged into court' for the malfeasance of another and to thereupon forbid the defendant from establishing that fault should properly lie elsewhere.").

*Id.*  Furthermore, the Court reasoned, that excluding non-party alleged tortfeasors "from the universe of persons and entities to whom fault can be allocated has the effect of reviving joint and several liability[,]" which was discarded in *McIntyre* in order to "shift[] to plaintiffs the risk that no recovery could be obtained due to the presence of judgment-proof tortfeasors."  *Id.*

The *Carroll* Court rejected the plaintiff's argument that defendants would abuse a rule allowing the allocation of fault to immune non-parties, noting that "defendants are not

---

[3]The Court expressly stated that in workers' compensation cases, "a jury may still allocate fault to other tortfeasors against whom a plaintiff, for any reason, could not recover."  *Carroll*, 29 S.W.3d at 19.  For example, a jury is free to allocate fault to a nonparty against whom the statute of limitations has run.  *Id.* at 19 n.6.

permitted to shrug off blame with a causal 'I didn't do it; she did.'" ***Id.*** at 21. Instead, "because the nonparty defense is an affirmative defense, a jury can apportion fault to a nonparty only after it is convinced that the defendant's burden of establishing that a nonparty caused or contributed to the plaintiff's injury has been met. Thus, defendants are not permitted to casually shift blame to nonparties." ***Id.***

In the instant case, the jury was not officially asked to apportion fault to the unidentified driver of the white SUV. That is, the unidentified driver was not listed on the jury verdict form.[4] However, Bellsouth maintains that because the jury refused to allocate fault to the defendants, and because "it is inconceivable to think that 100% of the fault for this accident would be attributed to Bellsouth[,]" the jury must have "effectively allocated fault" to the unidentified driver. In support of its contention that the jury could not have apportioned 100% fault to Bellsouth, Bellsouth cites trial testimony that the cross-connect box damaged by Ms. Young had remained undamaged at its current location for twenty-six years prior to the accident.

The defendants, however, contend that because the unidentified driver of the SUV was not listed on the jury verdict form, fault was not allocated to him in violation of any rule prohibiting such inclusion. Instead, they argue that the jury's finding of no fault against the defendants evidences its conclusion that either Bellsouth was 100% at fault, or that none of the parties was at fault due to the existence of a sudden emergency. In support of their contention that the jury may have found Bellsouth at fault, the defendants cite testimony from multiple witnesses that Bellsouth's cross-connect box protruded into the street, and that Ms. Young's vehicle made contact with the box without ever leaving her traffic lane.[5] They further argue that evidence regarding the white SUV was appropriately introduced, not to show that the SUV caused the accident, but to show that it caused a sudden emergency to which the defendants responded reasonably.

In the instant case, it is unclear whether the jury, in assigning 0% fault to the defendants, effectively apportioned fault to Bellsouth, the unidentified driver of the white SUV, or to no one at all. Based on the testimony of three witnesses regarding the existence of the white SUV, we find that the jury could have found that Ms. Kinsella met her burden of proving its contribution to the accident. Furthermore, because *Carroll* "broadly permit[s] allocation of fault to *all* persons involved in an injury-causing event[,]" 29 S.W.3d at 21

----

[4]It appears that Ms. Young, Ms. Kinsella, and Bellsouth were listed on the jury verdict form. Because the jury found the defendants 0% at fault, it apparently did not address Bellsouth's fault. The trial court instructed the jury as follows: "The parties to whom you may assign fault are Defendant Kinsella, Defendant Young, Plaintiff [Bellsouth]."

[5]However, a Bellsouth claim investigator testified that the cross-connect box did not protrude into the street.

(emphasis added), we find that the jury could properly consider fault of the unidentified driver, and therefore, that the trial court did not err in allowing references to such driver. Accordingly, the judgment of the trial court is affirmed.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to Appellant, Bellsouth Telecommunications, Inc. d/b/a AT&T, and its surety, for which execution may issue if necessary.

        _____

ALAN E. HIGHERS, P.J., W.S.