# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 23, 2014 Session

## CLIFTON A. LAKE, ET AL. v. THE MEMPHIS LANDSMEN, LLC, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-00-6094-00      John R. McCarroll, Jr., Judge**

---

**No. W2011-00660-COA-RM-CV - Filed March 7, 2014**

---

This appeal is from a jury verdict in a negligence and products liability case. Plaintiff-Husband suffered a traumatic brain injury when he was a passenger on a bus that collided with a concrete truck. Plaintiff-Husband and Plaintiff-Wife filed suit against the bus manufacturer, the bus owner, and the bus owner's franchisor. The jury found that the Plaintiffs suffered $8,543,630 in damages, but apportioned 100% of the fault for the collision to the owner of the concrete truck, with whom the Plaintiffs reached a settlement prior to trial. Plaintiffs appealed. We find that the jury's verdict was proper and is supported by material evidence. We therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J. and J. STEVEN STAFFORD, J., joined.

C. Phillip M. Campbell and Gary K. Smith, Memphis, Tennessee, for the appellants, Clifton A. Lake and Charleen J. Lake.

Kenneth R. Rudstrom, Memphis, Tennessee, and James E. Singer, Atlanta, Georgia, for the appellee, The Memphis Landsmen, LLC.

Molly A. Glover, Anna Vergos Blair, Eric J. Lewellyn, Aaron Robert Parker and Steven N. Snyder, Jr., Memphis, Tennessee, for the appellee, Metrotrans Corporation.

Kirk A. Caraway, Heather Webb Fletcher and James Branson Summers, Memphis, Tennessee, for the appellee, Budget Rent A Car System, Inc.

## OPINION

### I. BACKGROUND

On March 18, 1998, Clifton Lake ("Lake") was injured when a 60,000 pound concrete truck owned by Horn Lake Redi-Mix ("Horn Lake") collided with the shuttle bus on which he was riding near Memphis International Airport. The collision spun the back of the bus into a light pole and Lake, one of two passengers on the bus, was thrown through one of the bus's side windows, landing on the concrete curb and suffering a traumatic brain injury. Lake, an attorney from Chicago, had arrived that morning and was riding the bus from the airport to a Budget Rent A Car location to pick up his rental car. The shuttle bus was owned by Memphis Landsmen, L.L.C. ("Landsmen"), which owned and operated the Budget Rent A Car office pursuant to a franchise agreement with Budget Rent A Car System, Inc. ("Budget"). Landsmen purchased the shuttle bus directly from the manufacturer, Metrotrans Corporation ("Metrotrans"). Metrotrans manufactured the shuttle bus in 1995. The windows used in the shuttle bus were manufactured by Hehr International, Inc. ("Hehr").

Lake and his wife, Charleen Lake (collectively, the "Plaintiffs"), commenced this suit on October 18, 2000.[1] Having settled their claim against Horn Lake out of court, the Plaintiffs named Metrotrans, Landsmen, Budget (collectively, the "Defendants"), and Hehr. The trial court granted summary judgment in favor of Hehr, and the Plaintiffs later amended their complaint to remove the claim against Hehr.

The Plaintiffs asserted a cause of action for negligence against each of the Defendants. They contended that the bus driver failed "to exercise ordinary and reasonable care" in his operation of the bus and that Landsmen was vicariously liable as the driver's employer. The Plaintiffs contended that Metrotrans was negligent for the manufacture and sale of a bus without passenger seatbelts and that Landsmen was negligent for purchasing and using the bus when it had the option to install seatbelts and could have done so at a "relatively small cost." The Plaintiffs contended that Budget was negligent based on a franchise theory of agency, claiming that Landsmen acted as an agent of Budget in purchasing and using the shuttle bus. The Plaintiffs also contended that Budget acted negligently by not requiring its franchisees to include passenger seatbelts on shuttle buses.

The Plaintiffs also contended that each of the Defendants was strictly liable under the Tennessee Products Liability Act of 1978 ("Products Liability Act"). Tenn. Code Ann. §§ 29-28-101 to -108 (2012). The Products Liability Act provides, in pertinent part, that the

---

[1]The Plaintiffs originally filed suit in federal court in the Western District of Tennessee, however the complaint was dismissed on October 16, 2000 after the addition of a non-diverse defendant.

"manufacturer or seller of a product" may be held liable for injuries caused by the product if the product is "in a defective condition or unreasonably dangerous at the time it left control of the manufacturer or seller." *Id.* § 29-28-105(a). The Plaintiffs argued that the bus was in a defective condition and was unreasonably dangerous because it lacked passenger seatbelts, had side windows made of tempered glass rather than laminated glass, and used perimeter seating rather than forward-facing seats.

Each of the Defendants moved for summary judgment. Among other things, the Defendants contended that the Plaintiffs' claims based on the material used in the side windows and the lack of passenger belts were preempted by Federal Motor Vehicle Safety Standard ("FMVSS") 205 and 208. *See* 49 C.F.R. §§ 541.205, .208 (1995). The trial court granted partial summary judgment to Landsmen and Budget as to the products liability claims because neither was a manufacturer or seller of the shuttle bus, however it otherwise denied the motions, including the Defendants' assertion of preemption.

Over the course of three weeks in August 2008, the case was tried before a jury. At the close of the Plaintiffs' proof, each of the Defendants moved for a directed verdict. The trial court denied each of the motions. At the close of all proof, the Defendants each renewed their motions for directed verdict. At that time, the trial court granted Budget's motion on the issue of agency, and also granted a directed verdict as to the bus driver's negligence, ruling that there was insufficient evidence as a matter of law to demonstrate that the bus driver caused or contributed to Lake's injuries. The trial court denied the motions for directed verdict as to all other issues.

Following trial, the jury found that the Plaintiffs had suffered damages of $8,543,630. However, the jury found that Horn Lake, which was not a party to the suit, was 100% at fault for the accident and that none of the Defendants were at fault for the Plaintiffs' injuries. After the Plaintiffs' motion for a new trial was denied, the Plaintiffs timely appealed.

On appeal, this Court determined that the Plaintiffs' state law claims regarding the use of tempered glass in the shuttle bus's side windows were preempted by FMVSS 205. *Lake v. Memphis Landsmen, L.L.C.*, No. W2009-00526-COA-R3-CV, 2010 WL 891867, at *9 (Tenn. Ct. App. Mar. 15, 2010) ("*Lake I*"). Additionally, the Court determined that the Plaintiffs' claim regarding the lack of passenger seatbelts on the bus was preempted under FMVSS 208. *Id.* at *11. Having determined that preemption precluded recovery on those claims, the Court observed that the Plaintiffs' only remaining claim was based on the bus's perimeter seating arrangement. *Id.* at *12. In order to fully adjudicate the matter, the Court considered the trial court's denial of the Defendant's motion for directed verdict on the perimeter seating claim. *Id.* The Court concluded that because there was no evidence that Lake was seated at the time of the accident, a finding that his injury was caused by perimeter

seating would have been pure speculation by the jury. *Id.* at *13. Therefore, the Court held that the trial court should have directed a verdict for the Defendants at the close of the Plaintiffs' proof and declined to address the remaining issues in the case. *Id.*

Shortly after the decision in *Lake I*, the United States Supreme Court issued its ruling in *Williamson v. Mazda Motor of America, Inc.*, 131 S.Ct. 1131 (2011), which addressed the circumstances when federal motor vehicle regulations preempt state law tort claims. In March 2011, the Tennessee Supreme Court remanded *Lake I* for reconsideration in light of *Williamson*. On remand, this Court found that the preemption analysis of *Lake I* was not disturbed by the *Williamson* decision. *Lake v. Memphis Landsmen, L.L.C.*, W2011-00660-COA-RM-CV, 2011 WL 5022790, at *1 (Tenn. Ct. App. Oct. 21, 2011) ("*Lake II*"). Subsequently, the Tennessee Supreme Court granted the Plaintiffs' application for permission to appeal from *Lake II*.

On appeal, the Tennessee Supreme Court reversed *Lake II*, finding that the federal motor vehicle regulations at issue did not preempt the Plaintiffs' state law claims with regard to the use of tempered glass in the shuttle bus's side windows or with regard to the lack of passenger seatbelts. *Lake v. Memphis Landsmen, L.L.C.*, 405 S.W.3d 47, 50 (Tenn. 2013). Additionally, the Tennessee Supreme Court concluded that evidence on the Plaintiffs' perimeter seating claim was sufficient to avoid a directed verdict, reversing the contrary ruling in *Lake I*. *Id.* at 68. The case was remanded to this Court "to decide the remaining issues raised but not determined in the initial appeal." *Id.* at 69.

On appeal, the Plaintiffs have raised the following issues, as we restate them:

1.      Whether the trial court erred in denying the Plaintiffs' Motion for New Trial or to Alter or Amend the Judgment?

2.      Whether the trial court erred in failing to charge the jury as to the specific effect a finding of fault on the part of a non-party, Horn Lake, would have on the ultimate outcome?

3.      Whether the jury's verdict was contrary to the weight of the evidence and the trial court, as "thirteenth juror" should have set the verdict aside?

4.      Whether the trial court erred in permitting Horn Lake to be placed on the verdict form?

5.      Whether the trial court erred in granting partial summary judgment to

Memphis Landsmen and Budget on the products liability claim?

6. Whether the trial court erred in granting Budget a directed verdict on the Plaintiffs' claims of agency?

7. Whether the trial court erred in admitting evidence of compliance with government standards?

8. Whether the trial court erred in admitting a letter from former NHTSA general counsel dated August 19, 1992 into evidence?

9. Whether the trial court erred in excluding from evidence a letter from former NHTSA general counsel dated December 17, 1996?

10. Whether the trial court erred in denying the Plaintiffs' motion in limine to preclude evidence of Lake's alcohol use and its possible effects on his brain injury?

11. Whether the trial court erred in admitting into evidence a series of letters that were made exhibits to Dr. Frank Helge's deposition?

12. Whether all of the above errors, singularly or combination, constituted error which materially prejudiced the Plaintiffs and more probably than not affected the judgment or resulted in prejudice to the judicial process?

Metrotrans also raises the following issues, as we restate them:

1. Whether the trial court should have granted a directed verdict against the Plaintiffs' claims based on the use of tempered glass in the windows?

2. Whether the trial court should have charged the jury as to the rebuttable presumption that a product which complies with government standards is not unreasonably dangerous?

Budget also raises the following issue, as we restate it:

1. Whether the trial court erred in not granting a directed verdict to

Budget on the issue of whether Budget owed a legal duty to the Plaintiffs?

## II. STANDARD OF REVIEW

In reviewing a judgment based on a jury verdict, appellate courts are limited to determining whether there is material evidence to support the verdict. Tenn. R. App. P. 13(d); *Willis v. Settle*, 162 S.W.3d 169, 176 (Tenn. Ct. App. 2004). When addressing whether the verdict is supported by material evidence, appellate courts shall:

> (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all countervailing evidence. Appellate courts shall neither reweigh the evidence nor decide where the preponderance of evidence lies. If the record contains "any material evidence to support the verdict, the jury's findings must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury."

*Whaley v. Perkins*, 197 S.W.3d 655, 671 (Tenn. 2006) (internal citations and brackets omitted). We review the trial court's conclusions of law *de novo* without affording them a presumption of correctness. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

## III. ANALYSIS

### *Jury Verdict*

The Plaintiffs' first argument on appeal is that the trial court erred by denying their motion for a new trial or to alter or amend judgment. The Plaintiffs filed their motion pursuant to Tennessee Rules of Civil Procedure Rule 59 along with a memorandum of support on October 10, 2008. Each of the Defendants subsequently filed a response and memorandum opposing the Plaintiffs' motion. On January 27, 2009, the trial court denied the Plaintiffs' motion without hearing or comment.

When considering a motion for a new trial, the trial court judge acts as the thirteenth juror and must independently weigh the evidence, determine the issues presented, and decide whether the evidence supports the jury's verdict. *Dickey v. McCord*, 63 S.W.3d 714, 718 (Tenn. Ct. App. 2001) (citation omitted). If the trial court weighs the evidence and is satisfied with the jury's verdict, the trial court must approve the verdict. *Id.* However, if the trial court is not satisfied with the verdict, it must grant a new trial. *Id.* The trial court must

perform its duty as thirteenth juror without regard to and without showing deference to the jury's result. *Id.* In the absence of comment by the trial court in approving the jury verdict, we presume that the trial judge performed his function adequately. *Miller v. Doe*, 873 S.W.2d 346, 347 (Tenn. Ct. App. 1993) (citations omitted). "We cannot review the accuracy of the trial court's determination as thirteenth juror." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999).

Since the trial court approved the jury's verdict without comment, we presume the trial judge properly reviewed the evidence and agreed with the verdict. Thus, according to our standard of review, we must uphold the jury's verdict so long as there is some material evidence to support it. Tenn. R. App. P. 13(d). After reviewing the record, we find that there is ample material evidence in this case to support the jury's apportionment of 100% of the fault to non-party Horn Lake.

The undisputed evidence shows that Landsmen purchased the shuttle bus from the manufacturer, Metrotrans. The shuttle bus's design did not violate any state or federal regulations. Wayne McCracken, the Plaintiffs' accident reconstruction expert, testified that at the time of the accident, the shuttle bus was traveling twenty-eight miles per hour away from the airport, and the Horn Lake concrete truck was approaching the airport, intending to make a left turn. As the concrete truck made its left turn, it hit the driver's side rear corner of the shuttle bus at about ten miles per hour. The impact caused the back end of the shuttle bus to slide around counterclockwise before hitting a light pole and coming to rest. Mr. McCracken testified that the accident occurred because the concrete truck failed to yield to the shuttle bus. He further stated that the driver of the shuttle bus could not have done anything to avoid the accident. Indeed, the driver of the shuttle bus attempted to avoid the accident by swerving right, although he was unable to do so. As the jury's verdict is supported by the foregoing material evidence, we see no reason to disturb it.

### *Jury Instruction*

The Plaintiffs make two contentions with regard to the jury's instructions in this case. First, the Plaintiffs argue that the trial court erred by placing Horn Lake on the jury verdict form. Second, the Plaintiffs contend that if Horn Lake was properly listed on the verdict form, the trial court should have instructed the jury on the effects of allocating negligence to Horn Lake as a non-party. We begin by addressing the Plaintiffs' contention that Horn Lake should not have been included on the jury form.

For much of its history, Tennessee courts have applied the common law doctrine of contributory negligence, which barred recovery by plaintiffs whose own negligence contributed to their injury in any way. *Carroll v. Whitney*, 29 S.W.3d 14, 16 (Tenn. 2000)

(citations omitted). However in 1992, the Tennessee Supreme Court abandoned contributory negligence in favor of a system of modified comparative fault. *McIntyre v. Balentine*, 833 S.W.2d 52, 56 (Tenn. 1992). In doing so, the court sought a tighter fit between liability and fault. *Carroll*, 29 S.W.3d at 16. Under the new system, a defendant would only be liable for the percentage of damages that his or her own negligence caused. *Id.* at 16-17 (citing *McIntyre*, 833 S.W.2d at 58.) Additionally, the court adopted the non-party defense, allowing juries to apportion fault to a culpable person or entity though they are not a party to the lawsuit. *McIntyre*, 833 S.W.2d at 58. The court recognized that without allowing participants in the negligent act to share in the apportionment of fault, the tight fit between fault and liability would be lost. *Carroll*, 29 S.W.3d at 20. Indeed, this Court has stated that, "[t]he Trial Court has the responsibility to apportion fault to anyone having a degree of culpability." *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 585 (Tenn. Ct. App. 2002) (citing *Carroll*, 29 S.W.3d at 22; *Dotson v. Blake*, 29 S.W.3d 26 (Tenn. 2000); *Bervoets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905 (Tenn. 1994)).

In spite of the unrefuted case law on this point, the Plaintiffs contend that Horn Lake should not have been included on the verdict form because Lake's injuries were proximately caused by his ejection from the shuttle bus rather than the initial impact with the Horn Lake concrete truck. The Plaintiffs argue that this case involves two separate impacts: (1) the Horn Lake concrete truck's collision with the shuttle bus, and (2) the shuttle bus's collision with a light pole, which ejected Lake from the bus. The Plaintiffs contend that Lake's injuries were all suffered after the second impact, therefore the jury should not have been permitted to consider the first impact as a proximate cause.

To prevail on a negligence claim, a plaintiff must prove two kinds of causation: cause in fact and proximate cause. *Kirkpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). Cause in fact and proximate cause are both "ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994) (citation omitted). Cause in fact means that the injury would not have occurred "but-for" the negligent conduct. *Kirkpatrick*, 868 S.W.2d at 598. Proximate cause refers to the "cause and effect relationship between the tortious conduct and the injury." *Id.* (citations omitted). In Tennessee, courts consider three factors to determine proximate cause: (1) whether the tortious conduct was a substantial factor in bringing about the harm complained of; (2) whether there is some rule or policy that should relieve the wrongdoer of liability because of the manner in which the tortious act resulted in the harm; and (3) whether the harm could have been reasonably foreseen or anticipated by a person of ordinary intelligence and prudence. *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005) (citations omitted).

It is undisputed in this case that the negligence of Horn Lake's driver caused the concrete truck to collide with the shuttle bus. With regard to the proximate cause factors: (1) the collision between the concrete truck and the shuttle bus was clearly a substantial factor in bringing about Lake's injuries; (2) the Plaintiffs do not cite any rule or policy that should relieve Horn Lake of liability; and (3) Lake's injuries were a reasonably foreseeable result of Horn Lake's negligence. In the absence of any clearly defined reason why Horn Lake's negligence could not be a proximate cause of Lake's injuries, the trial court was correct to submit that question to the jury. We therefore find no error in the trial court's inclusion of Horn Lake on the verdict form.

We turn now to the Plaintiffs' contention that the trial court erred by failing to charge the jury as to the effect of a finding of fault on the part of Horn Lake. At the close of the trial, the jury found that none of the Defendants were negligent, but that non-party, Horn Lake, was. The jury attributed 100% of the fault for the Plaintiffs' injuries to Horn Lake. The jury went on to find that Lake sustained damages of $6,834,928 and that his wife sustained damages of $1,708,702–a total award of $8,543,630. However, because 100% of the fault was attributed to Horn Lake, and Horn Lake was not a party to the litigation, the Plaintiffs were unable to recover any of the awarded damages. On appeal, the Plaintiffs contend that the jury was misled by the court's instructions and should have been informed as to the consequences of assigning 100% of the fault to a non-party.

The Plaintiffs rely primarily on *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992), the seminal case in Tennessee on comparative fault, for the proposition that the jury should be instructed on the effect of its findings as to the percentage of negligence between the parties. Indeed, *McIntyre* states that "the trial court shall instruct the jury on the effect of the jury's finding as to the percentage of negligence as between the plaintiff or plaintiffs and the defendant or defendants." *Id.* at 57 (citing Colo. Rev. Stat. § 13-21-111.5(5)(1987)). However, the Plaintiffs' reliance on *McIntyre* is misplaced. Though *McIntyre* provides that juries are to be informed of the effect of allocating fault as between plaintiffs and defendants, the same rule does not apply to the allocation of fault between multiple defendants or defendants and non-parties. In fact, the Colorado statute that the *McIntyre* court relied upon for the proposition specifically states that, "the jury shall not be informed as to the effect of its finding as to the allocation of fault among two or more defendants." Colo. Rev. Stat. § 13-21-111.5(5) (1987). The reason for the distinction goes back to the previously discussed policy that drove the Tennessee Supreme Court to adopt comparative negligence in the first place: establishing a closer link between liability and fault. *See McIntyre*, 833 S.W.2d at 58. If the jury knows that a plaintiff will not be able to recover its full award from one negligent actor, the percentage of negligence the jury allocates to another negligent actor from whom the plaintiff can recover could be inflated. In *Carroll v. Whitney*, 29 S.W.3d 14 (Tenn. 2000), the Tennessee Supreme Court addressed this issue when determining whether non-

parties could be allocated liability at all, stating that if they could not, "the likelihood is great that the jury will allocate to a defendant fault that properly lies elsewhere." *Id.* at 20 (citation omitted). The *Carroll* court's decision clearly elucidates the preference in Tennessee to protect a defendant from liability greater than his or her proportional fault, even though such protection may come at the expense of plaintiffs. *Id.* at 20 ("Through our rejection of joint and several liability in *McIntyre*, we shifted to plaintiffs the risk that no recovery could be obtained due to the presence of judgment-proof tortfeasors.").

Turning back to the facts of the present case, logic dictates that had the jury been specifically instructed that the Plaintiffs could not recover damages from Horn Lake, the jury may have inflated the liability of the Defendants, thereby destroying the close link of fault and liability sought by the court in *McIntyre*. In light of the foregoing, we conclude that the trial court was not required to instruct the jury on the effect of allocating fault to Horn Lake. Accordingly, we find no error in the trial court's jury instruction.

### *Landsmen and Budget Products Liability Claims*

In their complaint, the Plaintiffs asserted a cause of action against each of the Defendants for strict liability under the Products Liability Act. Tenn. Code Ann. §§ 29-28-101 to -108. The trial court subsequently granted partial summary judgment to Landsmen and Budget with respect to the Plaintiffs' products liability claims. The Plaintiffs contend that the trial court erred in doing so.

A grant of summary judgment is appropriate only where the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). "When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party." *Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citations omitted). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citations omitted). The trial court's grant or denial of a motion for summary judgment is a question of law, which we must review *de novo* without a presumption of correctness. *Sherrill v. Souder*, 325 S.W.3d 584, 596 (Tenn. 2010) (citation omitted).

The Products Liability Act provides that a cause of action for injury caused by a defective or unreasonably dangerous product may be brought against a manufacturer or seller of the product. *See* Tenn. Code Ann. § 29-28-103. It defines a manufacturer as "the

designer, fabricator, producer, compounder, processor or assembler of any product or its component parts." Tenn. Code Ann. § 29-28-102(4). It defines a seller as "retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption," as well as "a lessor or bailor engaged in the business of leasing or bailment of a product." Tenn. Code Ann. § 29-28-102(7). After considering the issue, the trial court granted summary judgment to Landsmen and Budget, ruling that the Plaintiffs could not recover damages from either on a products liability theory because they had not manufactured or sold the shuttle bus or any of its component parts. The Plaintiffs argue that summary judgment was improper because Landsmen and Budget may be considered either a manufacturer or seller of the shuttle bus, which they contend was unreasonably dangerous. We disagree.

The Plaintiffs contend that Budget and Landsmen were designers of the shuttle bus and are therefore included in the Products Liability Act's definition of manufacturer. Viewing the evidence in the light most favorable to the Plaintiffs, it appears that Landsmen ordered the shuttle bus, pursuant to Budget's specifications, without passenger seatbelts or forward-facing seating, even though Metrotrans offered both options. We are unconvinced that Landsmen and Budget may be considered designers or manufacturers of the shuttle bus merely by choosing one of several options Metrotrans offered. Strict liability for designers is appropriate in instances in which a company that "exercises strict control over the design and testing of a product, even though the product is not manufactured by the company;" not where the consumer merely makes design specifications. 63 AM. JUR. 2D *Products Liability* § 87 (2010); *see also Bittler v. Doyen & Associates, Inc.*, 648 N.E.2d 1028, 1031 (Ill. App. Ct. 1995) ("Specifications are not intended as a substitute for a safe design and manufacture in accordance with the various safety statutes."). Additionally, the language of Tennessee Code Annotated section 29-28-105(a) dictates that strict liability does not apply unless the injury results from a product that is in a "defective condition or unreasonably dangerous condition *at the time it left control of the manufacturer or seller*." (emphasis added). As this Court has previously noted, that language indicates that a product must "actually leave the control of the manufacturer [or seller], . . . in order to be held strictly liable as a manufacturer [or seller] under the statute." *Leatherwood v. Wadley*, 121 S.W.3d 682, 702 (Tenn. Ct. App. 2003). Here, it is undisputed that the shuttle bus never left control of Landsmen and Budget.

Based on the foregoing, we find that no genuine issue of material fact exists as to whether Landsmen or Budget were manufacturers or sellers of the shuttle bus under the Products Liability Act. We therefore affirm the trial court's grant of summary judgment to them on the Plaintiffs' products liability claim.

### *Evidentiary Rulings*

The Plaintiffs argue that the trial court erred in several instances with regard to the admission and exclusion of certain evidence during the trial. We will review the Plaintiffs' contentions while remaining mindful of the wide discretion trial courts are afforded in determining the admissibility of evidence. *Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004) (citation omitted). We will only overturn a trial court's decision on the admissibility of evidence where there is an abuse of that discretion. *Id.* The trial court abuses its discretion "only when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citation omitted). We will not substitute our own judgment for that of the trial court; rather, we will uphold the trial court's ruling so long as reasonable minds can reach differing conclusions as to its propriety. *Id.*

We turn first to the Plaintiffs' contention that the trial court erred by admitting evidence that the shuttle bus was manufactured in compliance with government regulations, specifically FMVSS 208. FMVSS 208 "specifies performance requirements for the protection of vehicle occupants in crashes." 49 C.F.R. § 571.208, S1. In buses weighing 10,000 pounds or less, FMVSS 208 requires both driver and passenger seatbelts. *Id.* § 571.208, S4.2.1. However in buses weighing over 10,000 pounds, such as the shuttle bus in this case, FMVSS 208 only requires that the driver have a seatbelt, while remaining silent on seatbelt requirements for passengers. *Id.* § 571.208, S4.4.2.1-.2, S4.4.3.1.

In Tennessee, a party that is charged with negligently manufacturing a product may introduce proof of its compliance with federal regulations to demonstrate that it has satisfied its standard of care. *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 536 (Tenn. 2008). Evidence of such compliance creates a rebuttable presumption that the product was not unreasonably dangerous. Tenn. Code Ann. § 29-28-104. "Tennessee Code Annotated section 29-28-104 was designed 'to give refuge to the manufacturer who is operating in good faith and [in] compliance of what the law requires him to do.'" *Flax*, 272 S.W.3d at 536 (quoting *Tuggle v. Raymond Corp.*, 868 S.W.2d 621, 625 (Tenn. Ct. App. 1992)).

The Plaintiffs contend that because FMVSS 208 is silent on passenger seatbelt requirements for large buses, the trial court should not have allowed evidence that the shuttle bus was "in compliance" with the regulation by not having any. They contend that allowing the Defendants to state that they complied with federal regulation was misleading and "presented a false implication of direct government endorsement." We disagree. As we noted above, both the Tennessee courts and the Tennessee General Assembly have determined that compliance with government regulations is a relevant concern in products liability cases. The shuttle bus in this case was in compliance with FMVSS 208 because it

weighed over 10,000 pounds and had a sufficient seatbelt for its driver. To exclude evidence of the shuttle bus's compliance would undermine the purpose of Tennessee Code Annotated section 29-28-104 as a refuge for good faith manufacturers who operate in compliance with what the law requires them to do.

Next, the Plaintiffs argue that the trial court erred in its evidentiary rulings on two National Highway Transportation Safety Administration ("NHTSA") letters offered as evidence at trial. The NHTSA is the federal administrative agency charged with defining the minimum safety standards for motor vehicles, like those at issue in this case. 49 C.F.R. § 1.95(a) (2012). The first letter was written in 1992 ("1992 NHTSA Letter") by then chief counsel of the NHTSA, Paul Jackson, and was admitted into evidence at trial. The second is a 1996 letter ("1996 NHTSA Letter") written by then chief counsel of the NHTSA, John Womack, which was excluded from evidence. The Plaintiffs contend that the trial court abused its discretion in both rulings.

The 1992 NHTSA Letter addresses concerns that a bill pending in the New York state legislature would be preempted by FMVSS 208. If passed, the bill would have required passenger seatbelts on intercity buses operating in New York, with certain exceptions. The 1992 NHTSA Letter concludes that the proposed law is preempted by the federal regulation. Additionally, it states that the "NHTSA expressly determined that there is not a safety need for safety belts or another type of occupant crash protection" for passenger seats in buses over 10,000 pounds. Though the letter is indisputably relevant to the question of whether the shuttle bus was unreasonably dangerous when it was manufactured in 1995, the Plaintiffs argue summarily that the letter should have been excluded as confusing to the jurors because of its statements on preemption. In the absence of further explanation by the Plaintiffs, we are unable to see how the danger of jury confusion substantially outweighed the probative value of the 1992 NHTSA Letter. *See* Tenn. R. Evid. 403. We therefore conclude that the trial court did not abuse its discretion in admitting the 1992 NHTSA Letter.

The 1996 NHTSA Letter also addresses the issue of passenger seatbelts on buses over 10,000 pounds. The letter reiterates that the NHTSA has "not found sufficient justification" to require passenger seatbelts on large buses. However, it goes on to state that the "NHTSA does not prevent States and local jurisdictions that wish to order safety belts on large buses from doing so . . . . bus owners are free to purchase their buses with safety belts installed if they believe their particular circumstances warrant such installation." The Defendants objected to the introduction of the 1996 NHTSA Letter because it was written after the manufacture of the shuttle bus. The trial court sustained the objection. The Plaintiffs offer no evidence that the 1996 NHTSA Letter's exclusion contravened logic or caused an injustice to them; we therefore find no abuse of discretion in its exclusion.

Our disposition of the foregoing issues is sufficient to affirm the judgment of the trial court. Discussion of the remaining issues is therefore pretermitted.

## IV. HOLDING

For the foregoing reasons, we find that the trial court did not err in its instructions to the jury, and the jury's verdict was supported by material evidence submitted at trial. Additionally, we find that the trial court did not err in granting summary judgment to defendants Memphis Landsmen, L.L.C. and Budget Rent A Car System, Inc. on the issue of products liability. Further, we find that the trial court did not abuse its discretion with regard to the evidence admitted during the trial. All other issues are pretermitted. Consequently, we affirm the judgment of the trial court. Costs of this appeal are taxed to the appellants, Clifton Lake and Charleen Lake, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE